[Civ. No. 7369. Third Dist. Oct. 9, 1947.]

NAT CASTLEMAN et al., Appellants, v. HUBERT B. SCUDDER, as Real Estate Commissioner, etc., Respondent.

738

Marshall Abbott and Kenneth K. Scott for Appellants.

Fred N. Howser, Attorney General, and Lee B. Stanton, Deputy Attorney General, for Respondent.

PEEK, J.—This is an appeal from a judgment entered pursuant to an order of the trial court sustaining, without leave to amend, respondent's demurrer to appellants' petition for a writ of mandamus.

By their petition appellants sought to compel respondent to restore to them their licenses as business opportunity brokers which had been revoked by respondent after a hearing pursuant to an accusation filed by a deputy real estate commissioner. Said accusation charged petitioners with engaging in the practice of making claims for broker's commissions based upon authorizations to sell which did not bear a definite termination date, in violation of section 10301(f) of the Business and Professions Code of the State of California, the pertinent portions of which provided as follows:

"The commissioner may, upon his own motion, and shall, upon the verified complaint in writing of any person, investigate the actions of any person engaged in the business or acting in the capacity of a business opportunity licensee, within this State, and he may temporarily suspend or permanently revoke a business opportunity license at any time if the licensee, within the immediately preceding three years, while a business opportunity licensee, in performing or attempting to perform any of the acts within the scope of this chapter has been guilty of any of the following: . . .

"(f) The practice of claiming or demanding a fee, compensation or commission under any exclusive agreement authorizing or employing a licensee to sell, buy or exchange

a business, business opportunity, or interest therein, or the good will of an existing business, for compensation or commission where such agreement does not contain a definite, specified date of final and complete termination.''

The transcript of the hearing before the commissioner discloses that petitioners stipulated that prior to September 15, 1945, the effective date of said act, exclusive listing agreements were signed with certain named persons and delivered to petitioners; that subsequent to said date actions at law were instituted against such persons and that all of said agency agreements contained the clause: ''This agency shall continue 30 days from date hereof and thereafter until three days have elapsed after receipt of written notice from the Owner, terminating this agency, sent by registered mail, or delivered in person to said agent.''

Petitioners' contentions at the original hearing were that when the listing agreements were executed there was no law in this state requiring a termination date in any broker's agency contract inasmuch as the statute in question had not yet become effective; that therefore said section came within the prohibition of section 16, article I, of the Constitution of this state providing that the Legislature cannot enact any law impairing the obligation of contract. Additionally, petitioners argued that to apply the statute under the facts of this case would be to give it retroactive application, thereby impairing vested rights of petitioners which had accrued under such listing agreements. Comparable allegations were made in the mandamus proceeding but were rejected by the trial court. Such contentions are again argued on appeal.

At the outset it should be noted that respondent did not accuse petitioners of committing any illegal act prior to the effective date of the statute nor does he now maintain that the mere holding of an exclusive listing agreement without a definite specified date of final and complete termination is ground for revoking a license but he does contend (and it is so alleged in his accusation) that subsequent to the effective date of said section the *practice* of demanding or receiving a fee under agreements which contain no definite termination date is ground for revocation of a license under said section.

We are completely in agreement with appellants' statement of the general rule that the Legislature cannot, under the guise of the police power of the state, enact a measure which deprives one of a right bound to be respected and

protected by the state or which impairs the obligation of contract. (5 Cal.Jur. 748, and cases there cited.) ■ But it is equally well settled that the Legislature in a proper case in the exercise of its police power may regulate the conduct of business (*Ex parte Hadacheck*, 165 Cal. 416 [132 P. 584, L.R.A. 1916B 1248]) and thus into all contracts is superimposed the higher authority of the state which must be presumed to be known by all, and every contract is made in subordination of that authority and must yield to that control. (*Mott* v. *Cline*, 200 Cal. 434 [253 P. 718].) ■ In other words, not only are existing laws read into contracts in order to fix obligations as between the parties, but the reservation of essential attributes of sovereign power is also read into contracts as a fundamental principle of law. (*Home Building & L. Assn.* v. *Blaisdell*, 290 U.S. 398 [54 S.Ct. 231, 78 L.Ed. 413, 88 A.L.R. 1481].) ■ Furthermore, petitioners having qualified as licensees in a business already regulated under the police power of the state, they thereby accepted such licenses subject to the possibility of further regulatory legislation upon the same subject matter. (*Veix* v. *Sixth Ward Bldg. & L. Assn.*, 310 U.S. 32 [60 S.Ct. 792, 84 L.Ed. 1061].) ■ Therefore, as there can be no question of the power of the Legislature to ''restrict or prohibit trade practices which upon reasonable grounds it determines are predatory, vicious, unfair and anti-social'' (*Wholesale Tobacco Dealers Bureau* v. *National Candy & T. Co.*, 11 Cal.2d 634, 658 [82 P.2d 3, 118 A.L.R. 486]) the fundamental query to be determined is not whether a contract is affected incidentally or directly by the statute but whether the legislation is addressed to a legitimate end and the measures taken are reasonable and appropriate to that end. If this be true as regards the legislation here in question, and we conclude it is, then it does not matter whether such legislation has the result of modifying or revoking contracts already in effect. (*Stephenson* v. *Binford*, 287 U.S. 251 [53 S.Ct. 181, 77 L.Ed. 288, 87 A.L.R. 721]; *State B. A. Bureau* v. *Pomona Bldg. & L. Ass'n.*, 37 Cal.App.2d Supp. 765 [98 P.2d 829]:) This rule is consistent with the growing appreciation on the part of the Legislature and the courts of public needs, the interrelation of individual activities, and the complexity of our economic interests; all of which have inevitably led to an increased use of the organization of society in protecting the very bases of individual opportunity. (*Home Building & L. Assn.* v.

*Blaisdell, supra; Max Factor & Co.* v. *Kunsman,* 5 Cal.2d 446 [55 P.2d 177].)

 Petitioners' further contention that in any event the clause in the above-mentioned contracts attacked by the commissioner "contains a very definite method of a final and complete termination of the agency" and therefore does not come within the statute, is likewise without merit. The statute does not refer to a *method* of computation of the termination date upon the happening of some future event, but rather to the failure to set forth a definite specified *date* of final and complete termination. The contracts in question were printed on small cards with the figures "30" typed in. The 30 days constituted a minimum period during which the owner could not terminate the agency, and in no event would the agency terminate except upon the owner's compliance with the conditions of notice contained in the phrase which follows: "and thereafter until three days have elapsed after receipt of written notice. . . ." By particular wording section 10301(f) can be construed only to denote a definite date of termination specifically set forth in a contract at the time of its execution by the owner. An interpretation such as is contended for by petitioners, if adopted, would only perpetuate the very indefinite feature which the Legislature has said is contrary to the general public welfare.

The remaining questions set forth in appellants' briefs were neither raised before the commission nor in the trial court, and are such as may not be raised for the first time on appeal.

The judgment is affirmed.

Adams, P. J., and Thompson, J., concurred.