[Civ. No. 11952. Fourth Dist., Div. Two. Oct. 13, 1972.]

In re the Marriage of ROBERT LYNN and NORMA JANET WALTON.
ROBERT LYNN WALTON, Respondent, v.
NORMA JANET WALTON, Appellant.

**COUNSEL**

Gillette, Seifert & Pagter and George C. Gillette for Appellant.

Kurlander, Solomon & Hart, Charles R. Hart, Jr., and Ronald L. Gould for Respondent.

**OPINION**

**KAUFMAN, Acting P. J.**—Wife appeals from an interlocutory judgment granting Husband's petition for dissolution of marriage and denying Wife's request for legal separation.

*Facts* ·

The parties were married on or about August 7, 1948 and separated approximately 21 years later on August 7, 1969. On October 6, 1970, Husband filed a petition for dissolution of marriage on the ground of irreconcilable differences which have caused the irremediable breakdown of the marriage (Civ. Code, § 4506, subd. (1)). On October 12, 1970, Wife filed her response seeking legal separation on the same ground, irreconcilable differences which have caused the irremediable breakdown of the marriage (Civ. Code, § 4506, subd. (1)). Prior to trial Wife moved the court to dismiss Husband's petition on grounds that certain provisions of the Family Law Act enacted in 1969 (Stats. 1969, ch. 1608), particularly Civil Code, sections 4506, subdivision (1) and 4507, are violative of the California and federal Constitutions on several bases. The motion was denied, the matter proceeded to trial, and the court rendered an interlocutory judgment of dissolution of the marriage placing custody of the minor children of the parties with Wife, providing for spousal and child support and dividing the marital property.

### Contentions on Appeal

No error is urged with respect to those portions of the judgment dealing with child custody, spousal and child support and division of the marital property. Wife contends:

(1) Granting Husband's petition for dissolution of marriage on the ground of irreconcilable differences as specified in Civil Code, section 4506, subdivision (1) is violative of article I, section 10 of the United States Constitution and article I, section 16 of the California Constitution prohibiting the enactment of any law impairing the obligations of contract;

(2) Granting Husband's petition for dissolution of the marriage on the ground of irreconcilable differences as specified in Civil Code, section 4506, subdivision (1) constitutes a retroactive application of law to Wife depriving her of a vested interest in her married status in violation of the due process of law guarantees contained in article I, section 13 of the California Constitution and the Fourteenth Amendment to the United States Constitution;

(3) Granting Husband's petition for dissolution of the marriage on the ground of irreconcilable differences is violative of the constitutional guarantees of due process of law in that Civil Code, sections 4506, subdivision (1) and 4507 are too vague and ambiguous to assure uniform application;

(4) "The impact of The Family Law Act as to the Wife is unfair and unjust."

### Impairment of Contract

■ Wife's contention that dissolution of her marriage on the ground of irreconcilable differences as prescribed in the Family Law Act constitutes an unconstitutional impairment of her contract rights is untenable. In the first place, marital rights and obligations are not contractual rights and obligations within the meaning of article I, section 10 of the United States Constitution or article I, section 16 of the California Constitution. (*Maynard* v. *Hill,* 125 U.S. 190, 210-214 [31 L.Ed. 654, 659-660, 8 S.Ct. 723]; cf. *Ikuta* v. *Ikuta,* 97 Cal.App.2d 787, 790 [218 P.2d 854]; *Langdon* v. *Sayre,* 74 Cal.App.2d 41, 44-45 [168 P.2d 57]; see 3 Witkin, Summary of Cal. Law (7th ed. 1960) p. 2054.) Marriage is much more than a civil contract; it is a relationship that may be created and terminated only with consent of the state and in which the state has a vital interest. (Civ. Code, § 4100 [formerly Civ. Code, § 55]; *Maynard* v. *Hill, supra*; *De Burgh* v. *De Burgh,* 39 Cal.2d 858, 863-864 [250 P.2d 598].)

Secondly, even if marital obligations were treated as contractual obligations protected by the constitutional prohibitions, a statutory change in the grounds for divorce would not constitute an unconstitutional impairment thereof. "Marriage, as creating the most important relation in life, as having more to do with the morals and civilization of a people than any other institution, has always been subject to the control of the Legislature. That body prescribes the age at which parties may contract to marry, the procedure or form essential to constitute marriage, the duties and obligations it creates, its effects upon the property rights of both, present and prospective, and the acts which may constitute grounds for its dissolution." (*Maynard* v. *Hill, supra,* 125 U.S. at p. 205 [31 L.Ed. at p. 657]; accord: *McClure* v. *Donovan,* 33 Cal.2d 717, 728 [205 P.2d 17]; *Estate of Gregorson,* 160 Cal. 21, 24 [116 P. 60]; *Morganti* v. *Morganti,* 99 Cal.App.2d 512, 515 [222 P.2d 78].) When persons enter into a contract or transaction creating a relationship infused with a substantial public interest, subject to plenary control by the state, such contract or transaction is deemed to incorporate and contemplate not only the existing law but the reserve power of the state to amend the law or enact additional laws for the public good and in pursuance of public policy, and such legislative amendments or enactments do not constitute an unconstitutional impairment of contractual obligations. (*Home Building & Loan Assn.* v. *Blaisdell,* 290 U.S. 398, 434-438 [78 L.Ed. 413, 426-429, 54 S.Ct. 231, 88 A.L.R. 1481]; *Castleman* v. *Scudder,* 81 Cal.App.2d 737, 740 [185 P.2d 35]; *Phelps* v. *Prussia,* 60 Cal.App.2d 732, 741 [141 P.2d 440]; *State etc. Bur.* v. *Pomona etc. Assn.,* 37 Cal.App.2d Supp. 765, 768-770 [98 P.2d 829].)

## Deprivation of Property Without Due Process of Law

█ Similarly, Wife's contention that the dissolution of her marriage on the ground of irreconcilable differences under the Family Law Act unconstitutionally deprives her of a vested interest in her married status cannot be sustained. Certainly a wife has a legitimate interest in her status as a married woman, but, separate and apart from marital property and support rights as to which Wife makes no contention, we entertain some doubt whether her interest in her status as a married woman constitutes property within the purview of the due process clauses of article I, section 13 of the California Constitution and the Fourteenth Amendment to the United States Constitution. In any event, in view of the state's vital interest in the institution of marriage (*Maynard* v. *Hill, supra,* 125 U.S. at p. 205 [31 L.Ed. at p. 657]; *De Burgh* v. *De Burgh, supra,* 39 Cal.2d at pp. 863-864) and the state's plenary power to fix the conditions under which the marital status may be created or terminated (*Maynard* v. *Hill, supra; McClure* v. *Donovan, supra,* 33 Cal.2d at p. 728; *Estate of Gregorson, supra,* 160 Cal. at p. 24; *Morganti* v. *Morganti, supra,* 99 Cal.App.2d at p. 515), it is clear that Wife could have no vested interest in the state's maintaining in force the grounds for divorce that existed at the time of her marriage. Her interest, however it be classified, was subject to the reserve power of the state to amend the law or enact additional laws for the public good and in pursuance of public policy. (*Phelps* v. *Prussia, supra,* 60 Cal.App.2d at p. 742; cf. *Home Building & Loan Assn.* v. *Blaisdell, supra,* 290 U.S. at pp. 434-438 [78 L.Ed. at pp. 426-429]; *Castleman* v. *Scudder, supra,* 81 Cal.App.2d at p. 740; *State etc. Bur.* v. *Pomona etc. Assn., supra,* 37 Cal.App.2d Supp. at pp. 768-770.)

Even if Wife is said to have some constitutionally protected vested right, she has not been deprived thereof without due process of law. " 'Vested rights, of course, may be impaired "with due process of law" under many circumstances. The state's inherent sovereign power includes the so called "police power" right to interfere with vested property rights whenever reasonably necessary to the protection of the health, safety, morals, and general well being of the people. . . . The constitutional question, on principle, therefore, would seem to be, not whether a vested right is impaired by a marital . . . law change, but whether such a change reasonably could be believed to be sufficiently necessary to the public welfare as to justify the impairment.' " (*Addison* v. *Addison,* 62 Cal.2d 558, 566 [43 Cal.Rptr. 97, 399 P.2d 897] [quoting from Armstrong, *"Prospective" Application of Changes in Community Property Control—Rule of Property or Constitutional Necessity?* (1945) 33 Cal.L.Rev. 476, 495-496].) The public policy considerations felt by the Legislature to be com-

pelling reasons for the enactment of the Family Law Act and the change in grounds for divorce from a fault standard to a marital breakdown standard are described in the Report of 1969 Divorce Reform Legislation of the Assembly Committee on Judiciary (4 Assem. J. (1969) p. 8054 at p. 8057.) (See also Comment, *The End of Innocence: Elimination of Fault in California Divorce Law,* 17 U.C.L.A. L.Rev. 1306, 1307-1312.)

Moreover, strictly speaking, the application of the standards prescribed in the Family Law Act for dissolution of marriage in the case at bench does not constitute a retroactive application of the legislation. The Family Law Act became effective January 1, 1970 (Stats. 1969, ch. 1608, § 37) and was in effect when the petition for dissolution was filed, when the matter was tried and at the time of judgment. (Cf. *Addison* v. *Addison, supra,* 62 Cal.2d at p. 569; *In re Marriage of Silvers,* 23 Cal.App.3d 910, 911 [100 Cal.Rptr. 731].)

■ While the foregoing is conclusive of this issue, we note that, under this head, Wife asserts that Civil Code, section 4509 making evidence of specific acts of misconduct inadmissible except where child custody is in issue and such evidence is relevant to that issue or where it is determined by the court to be necessary to establish the existence of irreconcilable differences, arbitrarily and capriciously prevents the responding spouse from defending against a petition for dissolution on the ground of irreconcilable differences. Wife also questions how the court could find irreconcilable differences when the Husband testified he had never attempted a reconciliation.[1] On the record before us these assertions, express and implied, are without substance. Husband alleged in his petition the existence of irreconcilable differences. In her petition seeking separate maintenance, Wife did

---

[1]On this issue Husband testified as follows:

"Q. Have irreconcilable differences led to an irremediable breakdown of this marriage?

"A. Yes.

"Q. Have you attempted to seek reconciliation in regards to this matter?

"A. No, sir.

"Q. Do you think it would do any good?

"A. No.

"THE COURT: Do you think that with further passage of time that you and Mrs. Walton would reconcile?

"THE WITNESS: No."

Husband was not cross-examined on this point. As to irreconcilable differences the only testimony of Wife was as follows:

"Q. Now, you have filed a response to the petition under oath wherein you requested a separation, as opposed to a dissolution. Do you recall that?

"A. Yes.

"Q. Are you still of a mind that you do not want a dissolution of the marriage?

"A. Yes.

"Q. Is that in spite of your allegation of irreconcilable differences?

"A. Yes."

the same. At the time of trial the parties had been separated for more than two years without reconciliation. Albeit the specific nature of the differences was not brought out by either examination or cross-examination, both parties in their testimony acknowledged the existence of irreconcilable differences. Wife neither attempted to cross-examine Husband as to the specific nature of the differences nor did she attempt to invoke the court's discretionary power to permit evidence of specific misconduct under Civil Code, section 4509. In the trial court Wife sought, and she continues to seek on appeal, separate maintenance based on the existence of irreconcilable differences. Under these circumstances Wife is foreclosed from contending that she was prevented by Civil Code, section 4509 or otherwise from attempting to show that irreconcilable differences did not exist. A litigant is not permitted to change his theory of trial on appeal. (*Ernst v. Searle,* 218 Cal. 233, 240 [22 P.2d 715]; see 6 Witkin, Cal. Procedure (2d ed. 1971) pp. 4269-4270.)[2]

### Vague and Ambiguous Standard—Due Process of Law

We note again that Wife sought and continues to seek separate maintenance on the ground of irreconcilable differences prescribed by the very code provisions (Civ. Code, §§ 4506, subd. (1), 4507) she attacks as unconstitutionally vague. We are not at all certain that a litigant should be permitted to seek relief on the basis of a statute and at the same time attack it as unconstitutionally vague. Nevertheless, we consider the contention on its merits.

---

[2]In any event the contention that under the Family Law Act the responding spouse is precluded from showing that irreconcilable differences do not exist is without merit. As recently pointed out by the California Supreme Court: "Under the Family Law Act the court, not the parties, must decide whether the evidence adduced supports findings that irreconcilable differences do exist and that the marriage has broken down irremediably and should be dissolved. [Fn. omitted.]" (*In re Marriage of McKim,* 6 Cal.3d 673, 680 [100 Cal.Rptr. 140, 493 P.2d 868]; see Civ. Code, §§ 4507, 4508, 4511.) "Although the Legislature intended that as far as possible dissolution proceedings should be non-adversary, eliminating acrimony, it did not intend that findings of the existence of irreconcilable differences be made perfunctorily." (*In re Marriage of McKim, supra,* 6 Cal.3d at p. 679.) The court is to dissolve the marriage only when it has determined from the evidence "that there are irreconcilable differences, which have caused the irremediable breakdown of the marriage." (Civ. Code, § 4508.) Where necessary to its determination, the court is given discretion to receive evidence of specific acts of misconduct (Civ. Code, § 4509), but, in exercising this discretion, the court should bear in mind that one of the principal purposes for the change from dissolution on a fault basis to a marital breakdown basis was the desire to eliminate acrimony and devisiveness and to provide "a conciliatory and uncharged atmosphere which will facilitate resolution of the other issues and perhaps effect a reconciliation." (Report of 1969 Divorce Reform Legislation of the Assembly Committee on Judiciary [4 Assem. J. (1969) p. 8054 at p. 8058]; see *In re Marriage of McKim, supra,* 6 Cal.3d at p. 679.)

■ It is true that the due process clauses of the California and federal Constitutions require civil as well as criminal statutes to be sufficiently clear to provide a standard for uniform application. (*Morrison* v. *State Board of Education,* 1 Cal.3d 214, 231 [82 Cal.Rptr. 175, 461 P.2d 375] and authorities there cited; *Orloff* v. *Los Angeles Turf Club,* 36 Cal.2d 734, 739 [227 P.2d 449]; *Fletcher* v. *Western National Life Ins. Co.,* 10 Cal.App.3d 376, 405 [89 Cal.Rptr. 78].) However, reasonable certainty is all that is required. ■ A statute will not be held void for vagueness if any reasonable and practical construction can be given its language or if its terms may be made reasonably certain by reference to other definable sources. (*American Civil Liberties Union* v. *Board of Education,* 59 Cal.2d 203, 218 [28 Cal.Rptr. 700, 379 P.2d 4]; *Fletcher* v. *Western National Life Ins. Co., supra.*) A statute will be upheld if its terms may be made reasonably certain by reference to its legislative history or purpose. (See *Connally* v. *General Const. Co.,* 269 U.S. 385, 391-392 [70 L.Ed. 322, 328-329, 46 S.Ct. 126]; *People* v. *McCaughan,* 49 Cal.2d 409, 414 [317 P.2d 974].)

■ The standard for dissolution of marriage or separate maintenance specified in Civil Code, section 4506, subdivision (1) is: "irreconcilable differences, which have caused the irremediable breakdown of the marriage." We find no unreasonable uncertainty or ambiguity in this language. We do not know that we could improve upon the language of the statute, nor do we intend to substitute our language for that of the statute. In view, however, of the express legislative intention of "requiring the consideration of the marriage as a whole and making the possibility of reconciliation the important issue" and providing "a basis for dissolution which is descriptive of the actual reasons underlying marital breakdown" (Report of 1969 Divorce Reform Legislation of the Assembly Committee on Judiciary [4 Assem. J. (1969) p. 8054 at pp. 8058 and 8057, respectively]; see *In re Marriage of McKim, supra,* 6 Cal.3d 673, 678-679), the language of Civil Code, section 4506, subdivision (1) plainly refers to the existence of marital problems which have so impaired the marriage relationship that the legitimate objects of matrimony have been destroyed and as to which there is no reasonable possibility of elimination, correction or resolution. (Cf. *De Burgh* v. *De Burgh, supra,* 39 Cal.2d at p. 864.)

Neither is Civil Code, section 4506, subdivision (1) subject to the objection that it establishes a standard based upon the subjective attitude of the parties. In *In re Marriage of McKim, supra,* 6 Cal.3d at page 680, the California Supreme Court has made it clear that the Family Law Act does not constitute a license for dissolution of marriage by consent of the parties. In view of the mandate that the existence of irreconcilable differences must be pleaded generally (Civ. Code, § 4506), and that evidence of specific

acts of misconduct are admissible only in the two specific situations specified in Civil Code, section 4509, it is obvious that the court must depend to a considerable extent upon the subjective state of mind of the parties. Indeed, it was the legislative intent that that be a major consideration. (Report of 1969 Divorce Reform Legislation of the Assembly Committee on Judiciary [4 Assem. J. (1969) p. 8054 at p. 8057].) Nevertheless, in the final analysis, "[u]nder the Family Law Act the court, not the parties, must decide whether the evidence adduced supports findings that irreconcilable differences do exist and that the marriage has broken down irremediably and should be dissolved. [Fn. omitted.]" (*In re Marriage of McKim, supra;* see Civ. Code, §§ 4507, 4508, 4511.)

Some difficulty is presented by the language of Civil Code, section 4507 which reads: "Irreconcilable differences are those grounds which are determined by the court to be substantial reasons for not continuing the marriage and which make it appear that the marriage should be dissolved." This language could be read as a supervening definition of the words "irreconcilable differences" as used in section 4506, subdivision (1) and as meaning that irreconcilable differences are whatever substantial reasons the court finds for not continuing the marriage and which make it appear that the marriage should be dissolved. This would indeed make the standard dependent upon "the length of the chancellor's foot." We do not, however, construe Civil Code, section 4507 as a supervening definition of the term irreconcilable differences specified in Civil Code, section 4506, subdivision (1). ■ Parts of a statute are read and construed together to achieve harmony and to give effect to the legislative intent and to all of the parts so far as possible. (*Wemyss* v. *Superior Court,* 38 Cal.2d 616, 621 [241 P.2d 525]; *Estate of Stevens,* 27 Cal.2d 108, 119 [162 P.2d 918].) ■ Where possible, statutes are construed to avoid unconstitutionality. (*San Francisco Unified School Dist.* v. *Johnson,* 3 Cal.3d 937, 942 [92 Cal.Rptr. 309, 479 P.2d 669]; *In re Klor,* 64 Cal.2d 816, 821 [51 Cal. Rptr. 903, 415 P.2d 791]; *In re Ball,* 23 Cal.App.3d 380, 383 [100 Cal. Rptr. 189].) Applying the foregoing rules of statutory construction and looking to the overall legislative history of the Family Law Act, we have concluded that the purpose and effect of Civil Code, section 4507 are twofold.

■ The primary purpose of Civil Code, section 4507 is to indicate that the determination of the existence of irreconcilable differences specified in Civil Code, section 4506, subdivision (1) is to be made by the court, that is, that this determination is to be a judicial determination, not a ministerial one. The general legislative history of the Family Law Act is chronicled in the Report of 1969 Divorce Reform Legislation of the

Assembly Committee on Judiciary (4 Assem. J. (1969) p. 8054). The act resulted ultimately from two bills introduced in the 1969 Legislature: Senate Bill 252 and Assembly Bill 530. Senate Bill 252 as originally introduced was framed to contain substantially the recommendations of the Governor's Commission on the Family, including provisions in proposed section 4615 thereof by which the court would have been required to dissolve a marriage on a showing that the parties had taken certain procedural steps and that a certain period of time had passed. This concept of having the court, in some cases, dissolve the marriage as a ministerial function was rejected by the Assembly Judiciary Committee, Assembly Bill 530 and the legislation as finally enacted, which although embodied in Senate Bill 252 was largely based on the provisions of Assembly Bill 530, having been substantially amended in a conference committee. (See Report of 1969 Divorce Reform Legislation of the Assembly Committee on Judiciary [4 Assem. J. (1969) at p. 8058]; *In re Marriage of McKim, supra,* 6 Cal.3d at p. 679; see also Comment, *The End of Innocence: Elimination of Fault in California Divorce Law, supra,* 17 U.C.L.A. L.Rev. at p. 1320.) Civil Code, section 4507 had its genesis in Assembly Bill 530 and, in our view, along with Civil Code, sections 4508 and 4511, was intended to ensure that the determination of the existence of irreconcilable differences remained a judicial determination, not a ministerial one.[3]

The second purpose of Civil Code, section 4507 is to make clear that the irreconcilable differences sufficient to justify dissolution of marriage must be substantial as opposed to trivial or minor. (See Comment, *The End of Innocence: Elimination of Fault in California Divorce Law, supra,* at p. 1321.) As stated in the Report of 1969 Divorce Reform Legislation of the Assembly Committee on Judiciary (4 Assem. J. (1969) at p. 8058): "The test of irreconcilability will be met when, according to Civil Code, Section 4507, the differences sought to be proved are 'substantial reasons for not continuing the marriage and which make it appear that the marriage should be dissolved.' " ▮ Thus, reading Civil Code, sections 4506, subdivision (1) and 4507 together, irreconcilable differences which have caused the irremediable breakdown of the marriage refers to the

---

[3]In Assembly Bill 530 as introduced February 17, 1969, there was a proposed section numbered 4506 which read: "Irreconcilable differences are those grounds which are determined by the court to be substantial reasons for not continuing the marriage, and which, in conjunction with all the other evidence, make it appear that the marriage should be dissolved. In making this determination the court shall be guided by, but not limited to, the statutory grounds and corresponding judicial decisions in effect prior to the effective date of this act." By subsequent amendments to Assembly Bill 530, the section number was changed to 4507 and the language changed to that now found in Civil Code, section 4507.

existence of substantial marital problems which have so impaired the marriage relationship that the legitimate objects of matrimony have been destroyed and as to which there is no reasonable possibility of elimination, correction or resolution.

### Unfair and Unjust Impact of the Family Law Act

 Under this head, it is asserted that the elimination of the fault concept in dissolution proceedings is unjust and unfair because it permits a spouse guilty of morally reprehensible conduct to take advantage of that conduct in terminating marriage against the wishes of an entirely unoffending spouse. While this may be true and while such a result may be offensive to those steeped in the tradition of personal responsibility based upon fault, this contention presents no issue cognizable in the courts. After thorough study, the Legislature, for reasons of social policy deemed compelling, has seen fit to change the grounds for termination of marriage from a fault basis to a marriage breakdown basis. (See Report of 1969 Divorce Reform Legislation of the Assembly Committee on Judiciary (4 Assem. J. (1969)) *supra,* at p. 8057; see also *In re Marriage of McKim, supra,* 6 Cal.3d at pp. 678-679.) "It is not the province of the courts to inquire into the wisdom of legislative enactments." (*Harsco Corp.* v. *Department of Public Works,* 21 Cal.App.3d 272, 279 [98 Cal.Rptr. 337].)

Affirmed.

Tamura, J., and Gabbert, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied December 7, 1972.