**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

JOHN DOE,
   *Plaintiff-Appellee,*

  v.

KAMALA D. HARRIS,
   *Defendant-Appellant.*

No. 09-17362

D.C. No.
3:07-cv-03585-JL
Northern District of
California,
San Francisco

ORDER
CERTIFYING
QUESTION TO
THE STATE
SUPREME COURT
OF CALIFORNIA

Filed April 4, 2011

Before: John T. Noonan, Diarmuid F. O'Scannlain, and
Stephen S. Trott, Circuit Judges.

## COUNSEL

Peggy S. Ruffra, Supervising Deputy Attorney General of California, argued the cause for the appellant, and filed the briefs. Former Attorney General Edmund G. Brown and Senior Assistant Attorney General Gerald A. Engler were also on the briefs. Ms. Ruffra's address is 455 Golden Gate Avenue, Suite 11000, San Francisco, CA, 94102-7004.

Dennis P. Riordan, Riordan & Horgan, argued the cause for the appellee, and filed the brief. Donald M. Horgan and Michael S. Romano, Riordan & Horgan, were also on the

briefs. These attorneys share the following address: Riordan & Horgan, 523 Octavia Street, San Francisco, CA, 94102.

---

## **ORDER**

O'SCANNLAIN, Circuit Judge:

We certify to the California Supreme Court the question set forth in Part II of this order.

All further proceedings in this case are stayed pending receipt of the answer to the certified question. This case is withdrawn from submission until further order of this Court. The parties shall notify the Clerk of this Court within three days after the court accepts or rejects certification, and again within three days if the court renders an opinion. The panel retains jurisdiction over further proceedings.

I

Pursuant to Rule 8.548 of the California Rules of Court, a panel of the United States Court of Appeals for the Ninth Circuit, before which this appeal is pending, certifies to the California Supreme Court a question of law concerning the interpretation of California plea agreements. The decisions of the Courts of Appeal of the State of California provide no controlling precedent regarding the certified question, the answer to which may be determinative of this appeal. We respectfully request that the California Supreme Court answer the certified question presented below. Our phrasing of the issue is not meant to restrict the court's consideration of the case. We agree to follow the answer provided by the California Supreme Court. If the Supreme Court declines certification, we will resolve the issue according to our perception of California law.

II

The question of law to be answered is:

Whether, under California law, the default rule of contract interpretation is (a) that the law in effect at the time of a plea agreement binds the parties, or (b) that the terms of a plea agreement may be affected by changes in law.

III

The statement of facts is as follows.

A

In 1991, the state of California charged the Plaintiff-Appellee, who is proceeding under the pseudonym "John Doe,"[1]

---

[1]We have allowed Doe to continue to proceed under a pseudonym because drawing public attention to his status as a sex offender is precisely the consequence that he seeks to avoid by bringing this suit. However, no party has moved to seal the opinions or orders of this Court and, indeed, we held oral argument open to the public without objection. Moreover, when Doe moved in the district court to proceed under a pseudonym and to seal any document revealing his true identity, he stated that he did not intend to "prevent[ ] the public from observing the proceedings or rulings of this court." The Attorney General did move to file the excerpts of record under seal because "some of the documents contained [therein] include Doe's name and other identifying information." We granted that motion. But, to the extent that the Attorney General's motion could be construed as a request that we seal the instant order, or issue a heavily redacted version of it, it is denied. Any danger that Doe's identity could be deduced from the scant information in the certification order is outweighed by the "public interest in understanding the judicial process." *Hagestad v. Tragesser*, 49 F.3d 1430, 1434 (9th Cir. 1995); *see also Smith v. Doe*, 538 U.S. 84, 91 (2003) (publishing an opinion containing at least as much potentially identifying information about a pseudonymous plaintiff as the instant case); *Doe I v. Otte*, 259 F.3d 979, 982-83 (9th Cir. 2001) (same); *United States v. Stoterau*, 524 F.3d 988 (9th Cir. 2008) (denying motion to file disposition under seal, citing "the fundamental importance of issuing public decisions" (internal quotation marks omitted)).

with six counts of lewd and lascivious acts upon a child under the age of fourteen. Doe was charged with three counts of touching the victim's buttocks, one count of touching her breasts, one count of touching her vaginal area, and one count of putting his tongue in her mouth. The victim, "S.A.," was the daughter of Doe's close friends. Doe molested S.A. over an eighteen-month period when S.A. babysat Doe's younger children, and when she attended a sleepover at his house as a guest of his daughter. At the relevant time, Doe was in his forties, and S.A. was just twelve and thirteen years old. If convicted of these charges, Doe faced a maximum of eighteen years in prison.

Doe entered into a plea agreement in which he pleaded guilty to one count of committing a lewd and lascivious act upon a child, and, in exchange, the State dropped the remaining five counts. This agreement allowed Doe to avoid serving any time in jail. It provided that the maximum penalties for Doe's conviction would be probation, participation in a work furlough program, fines, and registration as a sex offender under California Penal Code § 290.

At the time, section 290 provided that "the statements, photographs, and fingerprints herein required shall not be open to inspection by the public or by any person other than a regularly employed peace or other law enforcement officer." Cal. Penal Code § 290(i) (West 1991). California, like many other states, has since passed a "Megan's law," which allows the public to access the state's sex offender registry. Cal. Penal Code § 290 (West 2011). Pursuant to this law, California now maintains a website through which members of the public can obtain the names, addresses, and photographs of the state's registered sex offenders. *Id.* § 290.4. California's Megan's law applies retroactively to sex offenders, such as Doe, who committed their crimes before the law was passed. *Id.* § 290.023.

## B

Doe brought suit against then-Attorney General Brown[2] under 42 U.S.C. § 1983, alleging a violation of his due process right to have his plea agreement honored. Specifically, Doe claims that his inclusion in the public sex offender website violated the State's implicit promise that he would not be subject to future amendments to section 290's confidentiality requirement.

The district court heard testimony from the prosecutor and defense attorneys who were involved in Doe's criminal case, as well as from Doe himself. The court concluded that "[w]hile there were other obvious benefits to Doe" in accepting the plea bargain, such as avoiding prison, "the confidentiality of registration was a material part of the deal as far as Doe was concerned." The district court also found that "the confidentiality provision of Section 290 was critical to Doe's decision to plead guilty rather than proceed to trial." This finding was based on private discussions which Doe had with his attorneys, and on Doe's testimony about his motivations for pleading guilty.

The only representation that the prosecutor made about sex offender registration occurred when he was going over the plea agreement with Doe and his attorneys. One of Doe's attorneys had drafted the plea agreement and gave it to the prosecutor to review. The prosecutor then added the following phrase by hand in the portion of the agreement labeled "maximum penalties": "four years parole, 290 PC registration, $10,000 restitution fine—$10,000 fine and testing per 290.2 PC." Doe and his counsel signed their initials beside the addition to show their acceptance of the new terms. The prosecutor testified that he added the phrase "P.C. 290 registration" because that statute mandated sex offender registration for

---

[2]The Court has substituted Attorney General Harris as the proper defendant in this action in place of former Attorney General Brown.

anyone convicted of the crime of committing a lewd act upon a child, and the prosecutor did not have the authority to exempt Doe from that requirement.

The district court determined that "there was no explicit agreement with respect to registration, except that the law required it. Thus the Penal Code section—290 P.C. registration requirement—was handwritten into the change of plea form by the prosecutor and initialed by Doe and his counsel," and "[n]o further elaboration appears." The court also concluded that "[n]o qualification or reservation of rights pending future legislative changes was contemplated . . . by either party."

From these facts, the district court inferred that "the parties could only have intended that the contemporary written version of the statute was meant to apply." The court reached this conclusion because it felt that "one cannot reasonably interpret the language of the plea agreement, which reads 'P.C. 290,' to mean [anything] other than compliance with that section of the Penal Code, as it was written at the time of the plea."

Accordingly, the district court found that publicly disclosing any of Doe's previously confidential sex offender registration information would violate the terms of Doe's plea agreement, and issued an injunction barring Attorney General Brown from so disclosing. The Attorney General timely appealed.

IV

We respectfully submit that the question presented in Part II requires certification because it poses an unsettled question of California law which could determine the outcome of this case.

Under the Due Process Clause, criminal defendants have a right to enforce the terms of their plea bargains enforced. *See Santobello v. New York*, 404 U.S. 257, 261 (1971). Plea agreements are "construed in accordance with state law." *Buckley v. Terhune*, 441 F.3d 688, 690 (9th Cir. 2006). Here, the district court found that, when Doe pleaded guilty in 1991, "[n]o qualification or reservation of rights pending future legislative changes was contemplated . . . by either party." Accordingly, the question is whether, under California law, the default rule of contract interpretation is (a) that the law in effect at the time of a plea agreement binds the parties, or (b) that the terms of a plea agreement may be affected by changes in law.[3]

The California Supreme Court touched on the question in *Swenson v. File*, 475 P.2d 852 (Cal. 1970). There, speaking about California commercial contracts, the court asserted that "[t]he parties are presumed to have had existing law in mind when they executed their agreement." *Id.* at 856. The court explained that "to hold that subsequent changes in the law which impose greater burdens or responsibilities upon the parties become part of that agreement would result in modifying it without their consent, and would promote uncertainty in commercial transactions." *Id.*

But, after *Swenson*, three California Court of Appeal cases applied the oposite rule to criminal plea agreements. The first to do so was *People v. Acuna*, 92 Cal. Rptr. 2d 224 (Ct. App.

---

[3]We have already held that California's publication of its sex offender registry does not constitute "punishment" within the meaning of the Ex Post Facto Clause. *See Hatton v. Bonner*, 356 F.3d 955, 963-64 (9th Cir. 2004); *cf. Smith v. Doe*, 538 U.S. 84 (2003) (holding the same for Alaska's Megan's law). We determined that the California legislature's purpose in passing Megan's Law was to protect the public by disclosing truthful information, not to punish sex offenders. *See Hatton*, 356 F.3d at 962. We also concluded that the law was not " 'so punitive' " in effect as to negate the legislature's public safety purpose. *Id.* at 967 (quoting *Smith*, 538 U.S. at 92).

2000). Gilbert Acuna pleaded guilty in 1992 to committing a lewd act upon a child under the age of fourteen, in violation of California Penal Code § 288. *Id.* at 226. At the time of Acuna's plea, California law allowed him to apply to the court after his probation ended to have his conviction expunged. *Id.* But, in 1997, the legislature amended that law to prohibit expungement of section 288 convictions. Acuna claimed that applying the amended statute to him violated his plea agreement. The court rejected Acuna's claim, however, because there was "no express provision in his plea bargain that mentions expungement," nor was expungement "clearly part of the parties' understanding." *Id.* at 228.

The California Court of Appeal held similarly in *People v. Gipson*, 12 Cal. Rptr. 3d 478 (Ct. App. 2004). Lonnie Gipson had pleaded guilty to a felony in 1993. *Id.* at 480. In 1994, the California legislature passed the "Three Strikes" law, which enhanced sentences for those with serious prior felony convictions. In 2001, Gipson was convicted of assault with a deadly weapon, and received an enhanced sentence under the Three Strikes law, in part because of his 1992 conviction. *Id.* Gipson claimed that the enhanced sentence violated his 1992 plea agreement which, he argued, "incorporated by reference" the prior, more lenient, recidivist statute. *Id.* (internal quotation marks omitted).

The court rejected Gipson's contention, holding that "not only is the existing law read into contracts in order to fix their obligations, but the reservation of the essential attributes of continuing governmental power is also read into contracts as a postulate of the legal order." *Id.* at 481 (internal quotation marks omitted). Ignoring *Swenson*, the court instead followed a California case which allowed marriage contracts to be amended by subsequent legislation. Both types of contracts, the court reasoned, implicate the public interest, and, therefore, are " 'deemed to incorporate and contemplate not only the existing law but the reserve power of the state to amend the law or enact additional laws for the public good and in

pursuance of public policy.' " *Id.* (quoting *In re Marriage of Walton*, 104 Cal. Rptr. 472, 476 (Ct. App. 1972)).

The Court of Appeal applied the same rule in *In re Lowe*, 31 Cal. Rptr. 3d 1 (Ct. App. 2005). There, Lowe pleaded guilty to second-degree murder in 1985, a crime which carried a prison term of fifteen years to life. *Id.* at 3. Under the then-existing California law, the California Board of Parole ("the Board") had sole responsibility for determining the amount of prison time that Lowe would in fact serve, beyond his minimum term of fifteen years. In 1988, however, the California voters amended the state constitution, and gave the governor the power to veto the Board's parole decisions, even those regarding prisoners who had pleaded guilty before the constitutional amendment was passed. *Id.* at 12. In 2002, the Board found Lowe suitable for parole, but the Governor vetoed that determination. *Id.* at 3.

Lowe brought a habeas petition in California state court, claiming that the application of the 1988 constitutional amendment to him violated his plea agreement. *Id.* at 7-8. He argued that his plea agreement contained an implicit promise that his parole application would be decided in accordance with the laws existing at the time of his plea, and that future legislative changes designed to make parole more difficult to obtain would not be applied to him. *Id.* The court rejected Lowe's claim, concluding that Lowe's plea agreement did not contain a promise that parole procedures "would not change over time." *Id.* at 13 (internal quotation marks omitted).

But the most recent California Court of Appeal case on this issue, *People v. Arata*, 60 Cal. Rptr. 3d 160 (Ct. App. 2007), appears to be in tension with the previous three. In *Arata*, the court considered the same issue it decided in *Acuna*, viz., whether it violated the plea bargain of a defendant, who pleaded guilty to committing a lewd act upon a child, to subject him to a subsequent law barring expungement of such convictions. *Id.* at 161. The court noted that, at the time of

Arata's plea, expungement was available "[i]n any case in which a defendant [had] fulfilled the conditions of probation." *Id.* at 162 (internal quotation marks omitted). Thus, even though expungement was not expressly mentioned in Arata's plea agreement, the court held that, "[b]y agreeing to give [Arata] probation, the plea bargain implicitly included the promise of [expungement] as part of probation." *Id.* at 166. In deciding whether California's Megan's Law may be applied to Doe, it is unclear whether we should apply *Swenson* and *Arata*, on the one hand, or *Gipson*, *Acuna*, and *Lowe*, on the other. As the answer to this question could determine the outcome of this case, we pray the California Supreme Court to accept our certification request.

## V

The names and addresses of counsel for the parties can be found in the counsel listing. *See* Cal. R. Ct. 8.548(b)(1). If the Supreme Court of California accepts this request, Attorney General Harris should be deemed the petitioner. *Id.*

The Clerk is hereby directed to transmit forthwith to the California Supreme Court the original and ten copies of this order, a certificate of service on the parties, and all relevant briefs and excerpts of record. *See* Cal. R. Ct. 8.548(d). The Clerk shall provide additional record materials if so requested by the Supreme Court of California. *See* Cal. R. Ct. 8.548(c).

**IT IS SO ORDERED.**