Filed 3/30/16  In re Baby Girl W. CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re BABY GIRL W., a Person Coming Under the Juvenile Court Law. | No. A145116 |
| _____ | (San Francisco City & County Super. Ct. No. JD14-3358) |
| SAN FRANCISCO HUMAN SERVICES AGENCY, | |
| Plaintiff and Respondent, | |
| v. | |
| BABY GIRL W., | |
| Appellant. | |

Baby Girl W., a toddler and dependent of the juvenile court pursuant to Welfare and Institutions Code section 300,[1] appeals via her counsel from the court's order giving the San Francisco Human Services Agency (Agency) authorization to consent to exchanges of her medical information.  She contends the court did so without limitation, and that as a result the court's order was devoid of statutory authority, unconstitutionally vague, an improper delegation of the court's authority and a violation of her right to privacy.  Therefore, she contends, the order is a manifest abuse of the court's discretion and must be reversed.  We affirm the order.

_____

[1]  All statutory references herein are to the Welfare and Institutions Code unless otherwise stated.

1

## BACKGROUND

Baby Girl W. was born in October 2014.  Her mother tested positive for illicit drugs and several sexually transmitted diseases, and left the hospital.  Neither mother nor a father have come forward since.

The Agency filed a dependency petition on Baby Girl W.'s behalf.  The court subsequently appointed an attorney to serve as both Baby Girl W.'s counsel and her Child Abuse Prevention and Treatment Act guardian ad litem, found most of the allegations in the petition were true, ordered Baby Girl W. to be placed in foster care and authorized the Agency "to obtain routine medical care" for her.

In March 2015, the Agency requested the court to "order delegating authority to [the Agency] to authorize consents for treatment and exchanges of information."  At the hearing on this request, the Agency's counsel said it had had "some concerns . . . with the providers" about exchanging information and that the order "would clear up everything."

Baby Girl W.'s counsel objected to the Agency's request, contending that the authority to consent to "exchanges of information" was too broad.  Counsel said Baby Girl W. had "some medical conditions to which society attaches great stigma."  Counsel was "concerned about an overbroad delegation of the authority to consent to release of confidential medical information to the Agency."  She had "no objection . . . to providers releasing health information to the Agency if it will help coordinate health care, which is consistent with the statutes," but there was "no authority" for "[t]he general delegation of the authority to consent to releases of confidential medical information to the Agency."  Also, Baby Girl W.'s counsel was only aware of one instance where obtaining information was a problem—when a public health nurse was unable to obtain information from a hospital—and did not think this was a "grand problem."

The Agency's counsel responded that the Agency had sought the new order after Baby Girl W.'s counsel had brought the issue to its attention and that there was no legal authority for her objection to the order.  On the other hand, section 369, subdivision (e) (which we will soon discuss) provided for the release of information when a court

2

ordered that an agency could consent to medical treatment. Also, counsel argued, the order was proper given the absence of Baby Girl W.'s parents and her medical needs.

The court said it did not understand Baby Girl W.'s counsel's objection to the order because "the Agency should be able to provide for releases of information since they're in charge now of the care for the child. They act as a parent. So if a parent can consent, they can consent. . . . Because otherwise we're left in a morass where these poor children have no one to consent; and when there is an issue, then you know, if—medical providers want releases for various things because they have lawyers who are telling them because of liability issues, you need to get this release . . . ." The court said it would sign the Agency's proposed order, and that the order was consistent with the statutes, not overly broad and merely put into an order the authority the court had already given to the Agency. In response to further objection by Baby Girl W.'s counsel about who might become privy to the information, the court stated, "I don't understand your concern about the exposure. The Agency is simply providing consent where requested by a medical provider so that they can, as I understand, coordinate information, get information from another health care provider, so that they give appropriate care to the child."

The juvenile court filed the written order on March 23, 2015 (March 23 order). It states in relevant part: "[T]he Court made dispositional orders in the absence of the parents, declared dependency and ordered the child be committed to the care and custody of the Agency for placement, planning and supervision. The Court further ordered that the Agency may obtain routine medical care for the child. The Court also found that based on the declaration of due diligence, reasonable efforts had been made to locate the Mother and the Alleged Father and that their whereabouts are unknown." The court further found that (1) "there is no one available to sign consents for ordinary medical, mental health, and dental care or exchanges of information on behalf of [Baby Girl W.]," (2) "it is in the best interest of children who are in the care and custody of the Agency, or under its supervision, who come within the provisions of . . . Section 300, to receive ordinary medical, mental health and dental care and treatment," and (3) "[t]hese children

3

would benefit from prompt provision of such treatment to maintain and enhance their physical and mental well being, and delay in such treatment could be detrimental." The court ordered that "authority to sign consents for ordinary medical, dental, and mental health care and exchanges of information in the above referenced matter is hereby delegated to the Agency" until such time as a parent presents herself or himself to the Agency and is able and willing to sign consents and releases on Baby Girl W.'s behalf.

Baby Girl W.'s counsel filed a timely notice of appeal on Baby Girl W.'s behalf.

## DISCUSSION

Baby Girl W. contends the court's March 23 order is without limitation, since it "allows the Agency unfettered authority to access and release [Baby Girl W.'s] confidential medical information to an unlimited universe of recipients for unspecified purposes." This is not the case.

Although the parties do not directly address the rules that guide us in the interpretation of an order, they are not controversial. "The meaning of a court order or judgment is a question of law within the ambit of the appellate court. [Citation.] 'The true measure of an order . . . is not an isolated phrase appearing therein, but its effect when considered as a whole. [Citations.] In construing orders they must always be considered in their entirety, and the same rules of interpretation will apply in ascertaining the meaning of a court's order as in ascertaining the meaning of any other writing. If the language of the order be in any degree uncertain, then reference may be had to the circumstances surrounding, and the court's intention in the making of the same.' " (*In re Ins. Installment Fee Cases* (2012) 211 Cal.App.4th 1395, 1429–1430.)

Applying these rules here, we note that the March 23 order states that "authority to sign consents for ordinary medical, dental, and mental health care and exchanges of information in the above referenced matter is hereby delegated to the Agency" until such time as a parent presents herself or himself to the Agency and is able and willing to sign consents and releases on Baby Girl W.'s behalf. Thus, the court gave the Agency authority to consent to "*ordinary* medical, dental, and mental health . . . exchanges of information" (italics added) and only until such time as a competent parent emerged.

4

This can hardly be said to be without limitation.  The court's findings as stated in the order further clarify that the court authorized the Agency to consent to these exchanges of information in order for Baby Girl W. to "receive ordinary medical, mental health dental care and treatment."  With these aspects of the order in mind, we review Baby Girl W.'s arguments.

## I.

### *Standard of Review*

We review the March 23 order for abuse of discretion.  "The juvenile court has wide latitude in making orders necessary for the well-being of a minor."  (*In re Jasmin C.* (2003) 106 Cal.App.4th 177, 180.)  The court "is vested with a 'very extensive discretion in determining what will be in the best interests of a child,' and . . . its determination will not be reversed save for clear abuse of that discretion."  (*In re Eric B.* (1987) 189 Cal.App.3d 996, 1005.)  To establish an abuse of discretion, "the appellant must demonstrate the juvenile court exercised its discretion in an arbitrary, capricious or patently absurd manner that resulted in a miscarriage of justice."  (*In re Joey G.* (2012) 206 Cal.App.4th 343, 346.)

A court may also abuse its discretion by misapplying the law.  As Baby Girl W. points out, "[t]he scope of discretion always resides in the particular law being applied, i.e., in the 'legal principles governing the subject of [the] action . . . .' . . . If the trial court is mistaken about the scope of its discretion, the mistaken position may be 'reasonable', i.e., one as to which reasonable judges could differ.  [Citation.]  But if the trial court acts in accord with its mistaken view the action is nonetheless error; it is wrong on the law."  (*City of Sacramento v. Drew* (1989) 207 Cal.App.3d 1287, 1297–1298.)

## II.

### *The Court Had the Statutory Authority to Issue the March 23 Order.*

Baby Girl W. contends the court did not have the statutory authority to issue the March 23 order.  We disagree.

When a child is adjudged a section 300 dependent, "the court may make any and all reasonable orders for the care, supervision, custody, conduct, maintenance, and support

5

of the child, including medical treatment, subject to further order of the court." (§ 362, subd. (a).) Where there is "no parent, guardian, or person standing in loco parentis capable of authorizing or willing to authorize medical, surgical, dental, or other remedial care or treatment for the dependent child, the court may . . . order that the social worker may authorize the medical, surgical, dental, or other remedial care for the dependent child, by licensed practitioners, as necessary." (*Id.* subd. (c).) Further, "[i]n any case in which the court orders the performance of any medical, surgical, dental, or other remedial care pursuant to [Section 369], *the court may also make an order authorizing the release of information concerning that care to social workers* . . . or any other qualified individuals or agencies caring for or acting in the interest and welfare of the child under order, commitment, or approval of the court." (§ 369, subd. (e), italics added.)

Baby Girl W. fails to explain why these provisions together did not give the juvenile court the authority to issue the March 23 order. She argues that section 369 only creates "an avenue for the social worker to *access* medical information regarding the child," but does not allow the social worker to authorize release of that information to a third party. Assuming for the sake of argument that Baby Girl W.'s contention is correct—a contention with which we do not agree when an agency has the concomitant obligation to ensure a child's health care—as the Agency points out, the court nonetheless can order pursuant to section 362 that an agency be allowed to share information regarding Baby Girl W.'s ordinary medical, dental and mental health care matters as necessary for Baby Girl W.'s health care treatment.

Anticipating this argument, Baby Girl W. asserts in her opening brief[2] that section 362 "cannot authorize what is otherwise prohibited by statute." While this may be true, Baby Girl W. does not establish that the court's exercise of its authority consistent with section 362 authorized anything that is prohibited by statute. The only legal authority she cites is Civil Code section 56.103, subdivision (h)(2), which is part of the Confidentiality of Medical Information Act (Civ. Code, § 56 et seq.). That

---

[2] Baby Girl W. has not filed a reply brief.

subdivision is contained in a section pertaining to disclosures by health care providers of a minor's medical information, including to social workers, for the purpose of coordinating health care services and medical treatment. The section provides, among other things, that a health care provider "may disclose medical information to a county social worker . . . or any other person who is legally authorized to have custody or care of a minor[3] for the purpose of coordinating health care services and medical treatment provided to the minor." (Civ. Code, § 56.103, subd. (a).) Further, "[m]edical information disclosed to a county social worker . . . or any other person who is legally authorized to have custody or care of a minor shall not be further disclosed by the recipient unless the disclosure is for the purpose of coordinating health care services and medical treatment of the minor and the disclosure is authorized by law." (*Id.* § 56.103, subd. (d).)

As part of the section that includes these subdivisions, Civil Code section 56.103, subdivision (h)(2), upon which Baby Girl W. relies, states in relevant part only that "[n]othing in this section shall be construed to expand the authority of the social worker . . . *beyond the authority provided under existing law to a parent or patient representative* regarding access to medical information." (Civ. Code, § 56.103, subd. (h)(2), italics added.) As our discussion of the March 23 order makes plain, nothing in it authorized the social worker to disclose medical information about Baby Girl W. beyond the legal authority provided to a parent and Baby Girl W. does not argue otherwise; indeed, the juvenile court analogized the role of the Agency to a parent under the circumstances, which included the disappearance of Baby Girl W.'s parents. Thus, Baby Girl W. has not established that the court's order transgressed any legal limitation on disclosure of her health care information.

Further, rather than showing the court's order is prohibited, Civil Code section 56.103 provides more legal authority for it. Section 56.103 indicates the Agency *may*

---

[3] The definition of "minor" in Civil Code section 56.103 includes section 300 dependents. (Civ. Code, § 56.103, subd. (g).)

disclose the medical information it receives about Baby Girl W. "for the purpose of coordinating health care services and medical treatment of the minor" if "the disclosure is authorized by law." (Civ. Code, § 56.103, subd. (d).) Baby Girl W. argues that there is a distinction between a social worker's access to medical information and his or her release or disclosure of that information and contends that section 56.103 does not allow the latter. However, she concedes that its subdivision (d) allows disclosure, but only for "narrowly defined purposes." What she does not concede is that the March 23 order was for exactly the purpose called out in Civil Code section 56.103, subdivision (d).

The Agency agrees that the March 23 order was issued for exactly this purpose. It states in its respondent's brief that it "*does not contend* that the juvenile court's order authorizes the exchange of information for any other purpose than coordination of [Baby Girl W.'s] health care. . . . [C]oordination of medical care was clearly the purpose for which the order was sought, and the court made clear that it shared this understanding when making its order." We conclude the same. The March 23 order, read as a whole, indicates the court was giving the Agency this authority for this purpose. The court was authorized by law to do so. (§§ 362, subd. (a), 369, subds. (c), (e); Civ. Code, § 56.103, subds. (a), (d).) Baby Girl W.'s lack of statutory authority argument has no merit.

## III.

### *The March 23 Order Was Not Unconstitutionally Vague.*

Baby Girl W. also argues that the court's order as written is unconstitutionally vague. Again, we disagree.

As our colleagues in Division Three of this court have noted, "[t]he underlying concern of a vagueness challenge 'is the core due process requirement of adequate *notice*.' . . . ' "A statute should be sufficiently certain so that a person may know what is prohibited thereby and what may be done without violating its provisions . . . ." ' " (*Amaral v. Cintas Corp. No. 2* (2008) 163 Cal.App.4th 1157, 1180 (*Amaral*).)

In support of her vagueness argument, Baby Girl W. quotes the proposition stated by our Supreme Court in *In re Sheena K.* (2007) 40 Cal.4th 875 (*Sheena K.*) that a statute cannot be enforced if its terms are so vague that people " ' "of common intelligence must

8

necessarily guess at its meaning and differ as to its application." ' " (*Id*. at p. 890, quoting *People ex rel. Gallo v. Acuna* (1997) 14 Cal.4th 1090, 1115 (*Acuna*).) However, our Supreme Court also stated in *Sheena K.* that "[i]n deciding the adequacy of any notice afforded those bound by a legal restriction, we are guided by the principles that 'abstract legal commands must be applied in a specific *context*,' and that, although not admitting of 'mathematical certainty,' the language used must have ' "*reasonable* specificity." ' " (*Sheena K.*, at p. 890, quoting *Acuna*, at pp. 1116–1117.)

In other words, "[a] contextual application of otherwise unqualified legal language may supply the clue to a law's meaning, giving facially standardless language a constitutionally sufficient concreteness. Indeed, in evaluating challenges based on claims of vagueness, the [United States Supreme Court] has said '[t]he particular context is all important.' " (*Acuna*, *supra*, 14 Cal.4th at p. 1116, quoting *Communications Assn. v. Douds* (1950) 339 U.S. 382, 412.) Further, a statute will not be held void for vagueness "if any reasonable and practical construction can be given its language or if its terms may be made reasonably certain by reference to other definable sources." (*In re Marriage of Walton* (1972) 28 Cal.App.3d 108, 116, quoted approvingly in *Acuna*, at p. 1117.) And " '[f]inally, and sometimes most importantly, common sense is also to be considered.' " (*Amaral*, *supra*, 163 Cal.App.4th at p. 1180.)

Applying these principles of context, reasonable certainty and common sense here, we conclude the juvenile court gave the Agency the authority to, as the language of the March 23 order itself indicates, consent to "ordinary medical, dental, and mental health . . . exchanges of information" in order for Baby Girl W. to "receive ordinary medical, mental health and dental care and treatment." This is not unconstitutionally vague.

Assuming for the sake of argument that the March 23 order's language is vague, its context makes its purpose clear. The hearing transcript indicates the parties and the court were seeking to clarify that the Agency had the authority to consent to disclosures of ordinary health care information for Baby Girl W. in order to facilitate her health care

9

after a public health nurse had been unable to obtain needed information from another provider.

And further assuming for the sake of argument that the court's March 23 order lacks reasonable certainty or reasonable specificity when read in context, an order "that otherwise would be deemed vague may be constitutional because the juvenile court offered additional oral or written comments clarifying" its terms. (*Sheena K.*, *supra*, 40 Cal.4th at p. 891.) The juvenile court did just that regarding the March 23 order when it stated at the hearing that the Agency needed to be able to provide for releases of information or else "we're left in a morass where these poor children have no one to consent; and when there is an issue, then, you know, if—medical providers want releases for various things because they have lawyers who are telling them because of liability issues, you need to get this release, you need to get this signed." The court explained that it was giving the Agency the authority to give consent "where requested by a medical provider so that they can, as I understand, coordinate information, get information from another health care provider, so that they give appropriate care to the child." And as the court's statement makes apparent, common sense dictates that when a minor has no one other than the Agency playing the role equivalent to parent, it must have the authority to consent to the exchange of ordinary health care information in order to ensure the proper health care of the minor.

Accordingly, we conclude Baby Girl W.'s vagueness argument lacks merit.

## IV.

### *Baby Girl W.'s Other Arguments Also Lack Merit.*

Baby Girl W. also argues that the March 23 order was an improper delegation of the court's authority to the Agency and a violation of her privacy. We need not address these arguments at any length because they are premised on Baby Girl W.'s incorrect assertion that the order gives the Agency authority without limitation to consent to the release of Baby Girl W.'s health care information.

Baby Girl W. supports her "improper delegation" argument with an analogy to the well-known rules limiting a court's delegation of authority to a social service agency

regarding a parent's right to visitation. (See, e.g., *In re T.H.* (2010) 190 Cal.App.4th 1119, 1124.) We need not address this analogy because her argument is flawed at its core, since it is premised on her contention that the March 23 order authorizes the disclosure and release of information "for purposes other than to coordinate health care" for Baby Girl W.

Similarly, Baby Girl W. contends that the March 23 order violates her privacy because it "would potentially allow a provider to release any confidential medical information contained in the child's medical record for any or no stated purpose. As such, it is an open-ended and dangerous tool that fails to protect the privacy rights of [Baby Girl W.]" As we have already discussed, the purpose of the March 23 order is to coordinate Baby Girl W.'s health care and nothing more, and it is authorized by law. Therefore, these arguments also lack merit.

## DISPOSITION

The court's order appealed from is affirmed.

_____

STEWART, J.

We concur.

_____

RICHMAN, Acting P.J.

_____

MILLER, J.

*In re Baby Girl W.* (A145116)