Filed 12/15/20

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br>v.<br><br>MICHAEL FRANCE,<br><br>        Defendant and Appellant. | A158609<br><br>(Mendocino County<br>Super. Ct. No.<br>SCUKCRCR1894426) |

Defendant Michael France pled guilty to one count of being a felon in possession of a firearm and admitted one allegation that he had served a prior prison term. In exchange, the prosecution dismissed two strikes and two prior prison term allegations. In accordance with the plea agreement, the trial court sentenced defendant to four years in prison, consisting of three years for the gun charge and one year for the enhancement, but suspended execution of the sentence and placed him on probation for three years. When the trial court later found that France had violated the terms of his probation, it ordered France to serve the previously suspended sentence.

France appeals, contending that Senate Bill No. 136 (2019–2020 Reg. Sess.) (Senate Bill 136), enacted after he filed his notice of appeal, entitles him to have the one-year prior prison term enhancement stricken with no other changes to his negotiated sentence. We agree and will therefore modify the judgment.

## I.  BACKGROUND

In 2018, France was charged with one count of being a felon in possession of a firearm in violation of Penal Code section 29800, subdivision (a)(1); two prior strike allegations under Penal Code sections 1170.12 and 667; and three enhancements under Penal Code section 667.5, subdivision (b) for having served prior prison terms.[1]  In June 2019, France pled guilty to the charge and one of the prior prison term enhancements and waived his entitlement to 403 days of custody credits, in exchange for dismissal of the rest of the enhancements and strike allegations.  France stipulated to a sentence of three years in prison for the charge and one year for the enhancement.  However, the plea deal also specified that execution of the sentence would be suspended and France would be placed on three years of probation.  The trial court sentenced France in accordance with the plea agreement.

In August 2019, a probation officer filed a petition alleging France had violated the terms of his probation by committing misdemeanor domestic battery under section 243, subdivision (e)(1).  After a contested hearing, the trial court found that France had violated his probation.  In September 2019, the trial court lifted the stay of the previously-imposed suspended sentence and ordered France committed to state prison for four years.[2]

---

[1] Undesignated statutory references are to the Penal Code.

[2] The trial court also found that France had violated his parole from another case and imposed a 180-day concurrent sentence.  France appealed from that ruling as well, but his briefing does not address the parole violation so we will not discuss it further.

## II.   DISCUSSION

France contends he is entitled to the benefit of Senate Bill 136, which amended section 667.5, subdivision (b) and took effect while his appeal was pending.  The People counter that France may not benefit from Senate Bill 136's changes because his case became final before the amendment took effect.  The People further argue that even if France is entitled to the benefit of Senate Bill 136, the proper remedy is to strike the one-year enhancement but allow the People on remand to choose whether to accept the lower sentence or abandon the plea bargain.  In reply, France argues that remand is not necessary, but that if it is, he may not be resentenced on remand to a longer term than he originally accepted in his plea agreement.  We agree with France that he is entitled to the benefit of Senate Bill 136 and that no remand is necessary.

### A.  *Retroactive application of Senate Bill 136*

When the trial court originally accepted France's plea and imposed the four-year sentence with execution of the sentence suspended, "section 667.5, subdivision (b) required trial courts to impose a one-year sentence enhancement for each true finding on an allegation the defendant had served a separate prior prison term and had not remained free of custody for at least five years.  (§ 667.5, subd. (b).)  Courts nevertheless had discretion to strike that enhancement pursuant to section 1385, subdivision (a). [Citation.] Effective as of January 1, 2020, Senate Bill 136 amend[ed] section 667.5, subdivision (b) to limit its prior prison term enhancement to only prior prison terms for sexually violent offenses, as defined in Welfare and Institutions Code section 6600, subdivision (b)." (*People v. Jennings* (2019) 42 Cal.App.5th 664, 681.)  The conviction underlying the prior prison term enhancement that France admitted was for attempting to threaten or

dissuade a witness in violation of section 136.1, subd. (a)(2), which is not listed in Welfare and Institutions Code section 6600, subdivision (b).  (Welf. & Inst. Code, § 6600, subd. (b).)

Because Senate Bill 136 reduced a criminal punishment, "[i]t is an inevitable inference that the Legislature must have intended that the new statute imposing the new lighter penalty now deemed to be sufficient should apply to every case to which it constitutionally could apply."  (*In re Estrada* (1965) 63 Cal.2d 740, 745 (*Estrada*); *People v. Buycks* (2018) 5 Cal.5th 857, 882 [" 'The rule in *Estrada* has been applied to statutes governing penalty enhancements, as well as to statutes governing substantive offenses' "].)  "This intent seems obvious, because to hold otherwise would be to conclude that the Legislature was motivated by a desire for vengeance, a conclusion not permitted in view of modern theories of penology."  (*Estrada*, at p. 745.)  Accordingly, as the People here concede, Senate Bill 136 applies retroactively to defendants whose cases were not yet final when the statute took effect on January 1, 2020.  (*People v. Cruz* (2020) 46 Cal.App.5th 715, 738–739.)

While the parties agree that Senate Bill 136 operates retroactively, they differ on whether France's conviction was or was not final.  Their disagreement turns on whether the difference between the two types of suspended sentences is significant for *Estrada* retroactivity.  "When it places a defendant on probation, the court has two sentencing options:  (1) it can suspend the imposition of any sentence and merely set forth the conditions of probation, or (2) it can impose sentence, but suspend its execution, while at the same time setting forth the conditions of probation."  (Levenson et al., Cal. Criminal Procedure (The Rutter Group 2019) § 25:31; § 1203.2, subd. (c).)  If the imposition of sentence is suspended, a court has full sentencing discretion when it revokes a defendant's probation.  (*People v.*

4

*Howard* (1997) 16 Cal.4th 1081, 1087.)  But when execution of sentence is suspended, a trial court revoking probation must order the exact imposed sentence into effect, without change.  (*Id*. at pp. 1087–1088.)  Here, France argues that ameliorative changes in the law apply retroactively to both types of defendants who receive probation, while the People contend that only a defendant for whom the imposition of sentence is suspended can benefit from such changes.

*People v. Contreraz* (2020) 53 Cal.App.5th 965 (*Contreraz*), review granted and briefing deferred, Nov. 10, 2020, decided while the parties were briefing this case, recently addressed this same issue.  In that case, the defendant pled guilty in 2017 to several charges and enhancements, received a sentence of 10 years in prison with execution of the sentence suspended, and was placed on probation.  (*Id*. at 968–969.)  The trial court later terminated the defendant's probation and executed the previously imposed sentence.  (*Id*. at p. 969.)  The Court of Appeal initially affirmed, but the California Supreme Court granted review and transferred the matter back for reconsideration in light of its decision in *People v. McKenzie* (2020) 9 Cal.5th 40 (*McKenzie*).  (*Contreraz,* at pp. 967–968.)  On remand, *Contreraz* decided the defendant was entitled to the retroactive benefit of Senate Bill No. 620 (Reg. Sess. 2017–2018) (Senate Bill 620), even though the trial court originally imposed a sentence and suspended only the sentence's execution.  (*Contreraz,* at pp. 969–970.)

The court reviewed *McKenzie*, on which France also relies.  (*Contreraz*, *supra*, 53 Cal.App.5th at p. 970.)  In *McKenzie*, a trial court suspended imposition of a sentence for a defendant and placed him on probation.  (*McKenzie*, *supra*, 9 Cal.5th at p. 43.)  When the court later revoked the defendant's probation, the issue was whether he was entitled to the

5

retroactive benefit of an intervening change to one of his sentence enhancements. (*Ibid.*) *McKenzie* stated that *Estrada* retroactivity applies whenever a criminal sentence or proceeding has not yet reached final disposition in the highest court authorized to review it. (*Id.* at p. 46.) The court held the defendant's case had not reached its final disposition when the amendment took effect because the appeal from the order revoking probation and sentencing the defendant to prison was still pending. (*Ibid.*) *McKenzie* further noted that the defendant could not have raised the retroactivity issue in a direct appeal from the grant of probation, because the statutory amendments occurred after that time for appeal had lapsed. (*Id.* at p. 50.)

*Contreraz* acknowledged that *McKenzie* dealt with a grant of probation with imposition of sentence suspended and did not consider the finality of an order imposing sentence with execution of the sentence suspended, but the court nonetheless found *McKenzie*'s reasoning to be dispositive. (*Contreraz*, *supra*, 53 Cal.App.5th at p. 970.) *Contreraz* reasoned that just as in *McKenzie*, the defendant could not have argued on appeal from the grant of probation that his sentencing enhancement was invalid based on Senate Bill 620 because that law had not yet taken effect. (*Id.* at pp. 967, 971.)

*Contreraz* also reasoned that its decision was consistent with *People v. Chavez* (2018) 4 Cal.5th 771 (*Chavez*), on which *McKenzie* relied. (*Contreraz*, *supra*, 53 Cal.App.5th at p. 971.) *Chavez* held that a court cannot dismiss an action after a defendant's probation period has expired, because a criminal action does not terminate when the trial court orders a grant of probation and instead continues into the period of probation. (*Chavez, supra*, 4 Cal.5th at pp. 777, 784–785.) *Chavez* "explained that neither forms of probation—suspension of the imposition of sentence or suspension of the execution of sentence—results in a final judgment. In a case where a court suspends

imposition of sentence, it pronounces no judgment at all, and a defendant is placed on probation with 'no judgment pending against [him].' [Citation.] In the case where the court suspends execution of sentence, the sentence constitutes 'a judgment provisional or conditional in nature.' [Citation.] The finality of the sentence 'depends on the outcome of the probationary proceeding' and 'is not a final judgment' at the imposition of sentence and order to probation." (*Id.* at p. 781.) The court noted that "[d]uring the probation period, the court retains the power to revoke probation and sentence the defendant to imprisonment." (*Id.* at p. 782.) *Chavez* found irrelevant the rule that an order granting probation is considered a final judgment for the purposes of appeal, pointing out that this rule gives a probation order only "limited finality" and does not give it the effect of a final judgment for other purposes. (*Id.* at p. 786.)

*Contreraz* observed that the trial court similarly had the power to revoke, terminate, or modify the defendant's probation and order the execution of the sentence, just as it did in *Chavez*. (*Contreraz*, *supra*, 53 Cal.App.5th at pp. 971–972.) *Contreraz* therefore concluded that for retroactivity purposes, the order placing the defendant on probation with execution of sentence suspended was provisional or conditional, not a final judgment. (*Ibid.*) *Contreraz* also emphasized that it was guided by *Estrada*'s paramount consideration that the Legislature must have intended for its ameliorative statutory change to apply to every case to which it constitutionally could apply. (*Id.* at p. 972.)

We agree with the reasoning in *Contreraz* and reach the same conclusion. The People contend that because the trial court only had jurisdiction when revoking the probation to order the suspended sentence into execution, there is no good reason to allow France to challenge the

7

validity of the imposed sentence. This position has a superficial appeal: If a trial court cannot change the terms of a prison sentence after imposing and suspending it (*People v. Howard*, *supra*, 16 Cal.4th at pp. 1087–1088), then it likewise appears logical to prevent a defendant from challenging the terms of the sentence under retroactive statutes. But the appeal of this argument withers when considered in the light of *Chavez*, *McKenzie*, and the rationale for *Estrada* retroactivity, all of which *Contreraz* highlighted. *Chavez* made clear that any grant of probation is not a final judgment, despite its appealability, because the ultimate outcome of the proceeding remains provisional or conditional and the court retains the power to revoke the probation until the end of the probationary period. (*Chavez*, *supra*, 4 Cal.5th at pp. 781–782, 786.) The People correctly point out that *Chavez* did not involve the issue of finality for the purposes of *Estrada* retroactivity and finality can mean different things in different contexts, but *McKenzie*'s reliance on *Chavez* demonstrates that it is relevant authority on the question of *Estrada* retroactivity. (*McKenzie*, *supra*, 9 Cal.5th at pp. 46–47.)

*McKenzie* provides further support for our conclusion. Even if the trial court's initial grant of probation to France could be considered a final judgment for some purposes, such as appealability, his proceeding as a whole was not final, as the later revocation of probation and this appeal demonstrate. (See *McKenzie*, *supra*, 9 Cal.5th at p. 46.) The People seek to distinguish *McKenzie* as involving only probation with imposition of sentence suspended, rather than probation with execution of sentence suspended. However, nothing in *McKenzie* suggests that its logic is limited to that context, as *Contreraz* recognized, and the People's contention is undermined by *McKenzie*'s reliance on *Chavez*—which made no distinction between grants of probation where imposition of sentence was suspended and those where

8

execution of sentence was suspended.  (*Contreraz*, *supra*, 53 Cal.App.5th at p. 970; *McKenzie,* at pp. 46–47.)  *McKenzie* also refutes the People's assertion that France's failure to challenge the imposition of his sentence via an appeal from the order initially granting him probation should bar him from seeking relief under Senate Bill 136.  Just as in *McKenzie* and *Contreraz*, Senate Bill 136 had not been enacted when France was granted probation, so France could not have raised his retroactivity argument in a direct appeal from that grant.  (*McKenzie*, at p. 50; *Contreraz*, at p. 971.)

Finally, like *Contreraz*, we emphasize *Estrada*'s holding that an ameliorative change in the law is presumed to apply retroactively "to every case to which it constitutionally could apply" because "to hold otherwise would be to conclude that the Legislature was motivated by a desire for vengeance, a conclusion not permitted in view of modern theories of penology." (*Estrada*, *supra*, 63 Cal.2d at p. 745.)  The People have not offered any credible reason why the Legislature would want to give the benefit of a retroactive change in the law to a defendant who received probation with imposition of sentence suspended but deny that benefit to a defendant who received probation with execution of sentence suspended.  Citing *People v. Superior Court* (*Rodas*) (2017) 10 Cal.App.5th 1316, 1326, the People assert that giving the benefit of ameliorative changes in the law to defendants who receive probation with execution of sentence suspended will encourage defendants in the future to violate the terms of their probation in the hopes of having it extended and garnering the benefit of any beneficial changes in the law during the probationary period.  But this argument would apply equally to probationers with imposition of sentence suspended and those with execution of sentence suspended, and *McKenzie* has already rejected this policy rationale in the latter context.  *McKenzie* found it "highly doubtful"

9

that a probationer would violate probation and risk the revocation of probation and imprisonment in the hope that the trial court would extend probation and the Legislature would enact an ameliorative statute in the extended period.  (*McKenzie*, *supra*, 9 Cal.5th at p. 49.)[3]  The People's argument here therefore has no merit.

## B.  *The proper remedy*

The People argue in the alternative that even if France were entitled to retroactive relief under Senate Bill 136, the proper form of relief would be to remand the case to the trial court so that the People would have the option of either accepting the original sentence without the one-year enhancement or abandoning the plea agreement and reinstating the original charges against France.  To evaluate the People's argument, we must review a series of Supreme Court decisions: *People v. Collins* (1978) 21 Cal.3d 208 (*Collins*); *Doe v. Harris* (2013) 57 Cal.4th 64 (*Doe*); *Harris v. Superior Court* (2016)

---

[3] The other authorities the People cite are inapposite or no longer viable after *Chavez* and *McKenzie*.  *People v. Scott* (2014) 58 Cal.4th 1415, 1419, 1421; *People v. Howard*, *supra*, 16 Cal.4th at pp. 1087–1088; and *People v. Ramirez* (2008) 159 Cal.App.4th 1412, 1420, did not involve *Estrada* retroactivity.  The statements in the Court of Appeal decision that preceded *McKenzie*, *People v. McKenzie* (2018) 25 Cal.App.5th 1207, 1214, regarding the finality of probation with execution of sentence suspended are dicta and not persuasive in light of the Supreme Court's subsequent decision in the same action and *Chavez*.  The defendant in *People v. Superior Court* (*Rodas*), *supra*, 10 Cal.App.5th at pp. 1320, 1326, received probation with imposition of sentence suspended, so it is inapposite and may have been abrogated by *McKenzie*.  *People v. Barboza* (2018) 21 Cal.App.5th 1315, 1318–1319, and *People v. Amons* (2005) 125 Cal.App.4th 855, 868, relied on the appealability of an order granting probation with execution of sentence suspended to conclude that a defendant receiving such a sentence was not entitled to the retroactive benefit of an ameliorative change in the law.  That reasoning is no longer sound in light of *Chavez* and *McKenzie*.

10

1 Cal.5th 984 (*Harris*); and *People v. Stamps* (2020) 9 Cal.5th 685 (*Stamps*). We briefly summarize each decision in turn.

### 1. *Collins*

In *Collins*, a defendant was charged with forcible oral copulation and other felonies. (*Collins*, *supra*, 21 Cal.3d at p. 211.) Pursuant to a plea bargain, he pled guilty to one count of oral copulation; the trial court struck the allegations that he committed the crime by force and had a prior felony conviction and dismissed the other 14 counts of the indictment. (*Ibid.*) The Legislature decriminalized non-forcible oral copulation before the defendant was sentenced, but the trial court still sentenced him to prison. (*Id.* at pp. 211–212.) The Supreme Court agreed with the defendant that his sentence could not stand because the conduct he admitted in his guilty plea was no longer punishable when he was sentenced. (*Id.* at p. 212.) But *Collins* rejected the defendant's argument that the remedy was to correct his sentence to " 'no penalty' " without disturbing the plea agreement. (*Id.* at p. 214.) Instead, the court found the solution was to reverse with directions to dismiss the count but allow the prosecution to refile the dismissed counts. (*Id.* at pp. 214–215.) The court reasoned that "[w]hen a defendant gains total relief from his vulnerability to sentence, the state is substantially deprived of the benefits for which it agreed to enter the bargain." (*Id.* at p. 215.) The court described the defendant's attempt to gain relief from the sentence but leave the plea bargain intact as "bounty in excess of that to which he is entitled." (*Ibid.*) But at the same time, the defendant was also entitled to the benefit of his bargain because he was not attacking his guilty plea. (*Id.* at p. 216.) *Collins* therefore permitted the state to revive one or more of the dismissed counts but instructed that the defendant's new sentence could not be more severe than under his plea bargain. (*Ibid.*) For the latter restriction,

11

*Collins* relied on precedents dealing with double jeopardy principles and concerns about avoiding vindictiveness or penalizing a defendant for pursuing a successful challenge to his sentence. (*Id.* at pp. 216–217.)

### 2. *Doe*

*Doe* arose from a case before the Ninth Circuit in which an individual contended that requiring him to comply with post-conviction amendments to the Sex Offender Registration Law would violate the terms of his plea agreement. (*Doe, supra,* 57 Cal.4th at pp. 65–66.) The Ninth Circuit certified to the California Supreme Court the question of whether, under California law governing plea bargains, the law in effect at the time of a plea agreement binds the parties or whether the terms of a plea agreement may be affected by changes in the law. (*Id.* at p. 66; *Doe v. Harris* (2011) 640 F.3d 972, 973 [certifying question].) Our Supreme Court held that plea agreements will generally be deemed to incorporate and contemplate the state's reserve power to change the law. (*Doe,* at pp. 66, 73.) As a result, the mere fact that parties have entered into a plea agreement "does not have the effect of insulating them from changes in the law that the Legislature has intended to apply to them" and "requiring the parties' compliance with changes in the law made retroactive to them does not violate the terms of the plea agreement." (*Ibid.*)

### 3. *Harris*

The defendant in *Harris* pled guilty to grand theft from the person, admitted a prior robbery conviction, and agreed to a six-year sentence in exchange for the dismissal of a robbery charge and other prior felony allegations. (*Harris, supra,* 1 Cal.5th at p. 988.) *Harris* considered whether the People were entitled to set aside a plea agreement when the defendant sought to have his sentence based on the agreement recalled under Proposition 47's (as approved by voters, Gen. Elec. (Nov. 4, 2014)) provision

12

for resentencing certain nonviolent felonies to misdemeanors. (*Harris*, at p. 987.) To resolve this question, *Harris* had to choose whether to follow *Doe* or *Collins*. (*Id.* at p. 991.) *Harris* sided with *Doe*. (*Id.* at pp. 992–993.)

*Harris* concluded the text and legislative history of Proposition 47 showed that the electorate intended it to be binding on the parties to a plea agreement. (*Harris*, *supra*, 1 Cal.5th at p. 991.) The court noted that the text of Proposition 47's resentencing provision expressly stated that it applied to anyone convicted "by trial or plea" without providing for rescission of a plea bargain. (*Id.* at pp. 991–992, citing § 1170.18, subd. (a).) *Harris* also observed that Proposition 47's resentencing process "would often prove meaningless if the prosecution could respond to a successful resentencing petition by withdrawing from an underlying plea agreement and reinstating the original charges filed against the petitioner" because plea agreements are " 'an accepted and "integral component of the criminal justice system and essential to the expeditious and fair administration of our courts." [Citations.] Plea agreements benefit that system by promoting speed, economy, and the finality of judgments.' " (*Id.* at p. 992.) *Harris* also reasoned that allowing the prosecution to withdraw from a plea agreement and refile charges would be at odds with one of Proposition 47's primary purposes: the reduction of nonviolent offenders in state prisons. (*Ibid.*) *Harris* harmonized its holding with *Collins* by distinguishing *Collins* substantively and procedurally, stating that the legislative change in *Collins* had "eviscerated the judgment and the underlying plea bargain entirely," and did so before the judgment. (*Id.* at p. 993.)

### 4. *Stamps*

*Stamps* was decided while the parties were briefing this appeal. At issue was Senate Bill No. 1393 (2017–2018 Reg. Sess.) (Senate Bill 1393), a

legislative amendment to section 1385 that, effective January 1, 2019, gave courts discretion to strike a prior serious felony enhancement in the same way they were already able to strike other sentence enhancements. (*Stamps*, *supra*, 9 Cal.5th at pp. 693, 701–702.) The defendant pled guilty to a burglary charge and a prior serious felony enhancement, in exchange for the dismissal of other charges and allegations. (*Id.* at p. 693.) The defendant argued on appeal that Senate Bill 1393 applied retroactively to his case and that the remedy was to remand for the trial court to exercise its discretion to strike the serious felony enhancement while leaving the rest of the plea bargain unchanged. (*Id.* at pp. 699–700.) *Stamps* agreed that Senate Bill 1393 operated retroactively but disagreed with the defendant as to the remedy. (*Ibid.*) The court explained the defendant had entered a plea agreement for a specific prison term and "long-standing law limits the court's unilateral authority to strike an enhancement yet maintain other provisions of the plea bargain." (*Id.* at pp. 700–701.) As a result, to justify a remand for the trial court to consider striking his serious felony enhancement while leaving the rest of his sentence untouched, the defendant had to establish that in enacting Senate Bill 1393, "the Legislature intended to overturn long-standing law that a court cannot unilaterally modify an agreed-upon term by striking portions of it under section 1385." (*Id.* at p. 701.)

*Stamps* concluded the Legislature had not intended that result. (*Stamps*, *supra*, 9 Cal.5th at p. 701.) The intent behind Senate Bill 1393 was to eliminate the rigid and arbitrary system that prevented judges from striking enhancements for serious felony convictions, thereby creating consistency with judges' discretion to strike other enhancements. (*Id.* at p. 702.) The court noted that the legislative history contained statistics showing that 79.9 percent of prisoners had some kind of sentence

14

enhancement, with $15 million in projected prison cost savings over five years if courts struck the serious felony enhancement for 100 defendants annually. (*Ibid.*) *Stamps* interpreted this history as demonstrating that while the Legislature may have intended to modify the sentencing scheme, it did not intend to "overturn existing law regarding a court's lack of authority to unilaterally modify a plea agreement." (*Ibid.*) The legislative history did not mention plea agreements at all, and *Stamps* viewed the Legislature's emphasis on creating uniformity in trial courts' sentencing discretion as indicating an intent not to change the law prohibiting courts from unilaterally altering plea agreements. (*Ibid.*)

*Stamps* then distinguished *Harris* and *Doe*. (*Stamps*, *supra*, 9 Cal.5th at pp. 702–704.) Unlike Proposition 47 (which was at issue in *Harris*), Senate Bill 1393 did not explicitly mention pleas in its text or legislative history. (*Id.* at p. 704.) Additionally, the court noted that allowing the trial court to strike the defendant's serious felony enhancement but leave the rest of the plea bargain untouched would give the court a power for serious felony enhancements that it lacked for any other enhancement and therefore run contrary to Senate Bill 1393's intent to create uniform trial court discretion as to all sentencing enhancements. (*Id.* at p. 704.)

After rejecting the defendant's preferred approach, *Stamps* then concluded that the proper remedy was to remand for the defendant to decide whether to seek the trial court's exercise of its discretion to strike the serious felony enhancement. (*Stamps*, *supra*, 9 Cal.5th at p. 707.) If the court chose not to exercise that discretion, that would be the end of the matter. (*Ibid.*) If it did choose to strike the enhancement, because the trial court "is not authorized to unilaterally modify the plea agreement," the prosecution would then be entitled to choose between modifying the plea bargain to reflect the

15

lower sentence or withdrawing from the agreement entirely. (*Ibid.*) Furthermore, if the trial court chose to strike the serious felony enhancement, it could also choose to withdraw its approval of the plea agreement. (*Id.* at p. 708.) *Stamps* emphasized that because of these potential consequences to the plea agreement, it was the defendant's choice whether to seek relief under Senate Bill 1393. (*Ibid.*)

## C. Analysis

The People argue that this case is like *Stamps* in that Senate Bill 136, like Senate Bill 1393, was intended to ameliorate punishment for a particular enhancement provision and neither its text nor its legislative history addresses plea bargaining. In a recent decision also dealing with retroactive application of Senate Bill 136, our colleagues in the Fifth District Court of Appeal agreed that *Stamps* governed and therefore held the People were entitled to choose between modifying the agreement to accept a lower sentence or withdrawing from the plea bargain. (*People v. Hernandez* (2020) 55 Cal.App.5th 942 (*Hernandez*), petn. for review pending, petn. filed Nov. 23, 2020.)[4] We believe the People and *Hernandez* have read *Stamps* too broadly.

---

[4] *Hernandez* relied on and followed *People v. Barton* (2020) 52 Cal.App.5th 1145, 1149, another decision from the Fifth District Court of Appeal that reached a similar conclusion regarding retroactive application of Senate Bill No. 180 (2017–2018 Reg. Sess.). (See *Hernandez, supra,* 55 Cal.App.5th at p. 955.) Our colleagues in Division Five of this court also recently issued two opinions agreeing with *Hernandez* regarding the prosecution's right to withdraw from the plea agreement on remand. (*People v. Griffin* (Nov. 30, 2020, A159104) ___ Cal.App.5th ___ [2020 Cal. App.Lexis 1138]; *People v. Joaquin* (Dec. 4, 2020, A152786) ___ Cal.App.5th ___ [2020 Cal.App. Lexis 1151].) Because the reasoning of the three decisions is largely the same, for simplicity we discuss only *Hernandez*.

We agree at the outset with *Hernandez* that Senate Bill 136 was intended to eliminate an ineffective sentence enhancement, depart from mass incarceration policies, save money, and reduce racial and socioeconomic disparities in the criminal justice system, making it similar in these respects to Senate Bill 1393. (*Hernandez*, *supra*, 55 Cal.App.5th at p. 957–959.) In addition, France has not cited (and we are not aware of) any provisions of Senate Bill 136 or its legislative history that address plea bargains or create an express mechanism for relief from convictions based on prior prison term enhancements.

However, *Hernandez* overstated the case when it read *Stamps* as establishing that the absence of a provision specifically addressing pleas "refutes any suggestion the Legislation intended to create special rules for the court to unilaterally modify the plea agreement once the enhancements are stricken." (*Hernandez*, *supra*, 55 Cal.App.5th at p. 958.) *Stamps* did not hold that such express provisions are necessary for a retroactive legislative amendment to authorize a trial court to strike an agreed-upon enhancement while holding the parties to the remaining terms of the plea agreement. Rather, it stated only that the absence of such provisions "undercuts" the notion that the Legislature intended to affect the otherwise applicable and long-standing bar on a trial court's ability to unilaterally modify plea-bargained sentences. (*Stamps, supra*, 9 Cal.5th at p. 704.) As *Stamps* made clear by also analyzing Senate Bill 1393's purpose, the question of how a statute applies to plea-bargained sentences comes down to legislative intent. (See *id*. at pp. 701–702.) At most, the absence of an express reference to pleas in Senate Bill 136 lends some support to the People's position, but it is not dispositive.

We place greater importance on the differences in how Senate Bill 1393 and Senate Bill 136 operate. Preventing Senate Bill 136 from applying to plea-bargained sentences would thwart or delay the full achievement of the Legislature's intent to reduce the expense and ineffectiveness of enhanced prison sentences based on prior prison terms, especially given that pleas of guilty or no contest "represent the vast majority of felony and misdemeanor dispositions in criminal cases."[5] (*In re Chavez* (2003) 30 Cal.4th 643, 654, fn. 5; Judicial Council of Cal., Court Statistics Rep., Statewide Caseload Trends, 2009–2010 Through 2018–2019 (2020), at pp. 55–56, 85–86; cf. *Harris*, *supra*, 1 Cal.5th at p. 992 ["The resentencing process that Proposition 47 established would often prove meaningless if the prosecution could respond to a successful resentencing petition by withdrawing from an underlying plea agreement and reinstating the original charges filed against the petitioner"].) The same could have been said with respect to the legislative goals of Senate Bill 1393. (See *Hernandez*, *supra*, 55 Cal.App.5th at p. 958.) But Senate Bill 1393 sought to achieve its aims through a different mechanism. Rather than reducing sentences directly by significantly narrowing the scope of an enhancement (in the way Senate Bill 136 does), Senate Bill 1393 merely gave

---

[5] France cites *People v. Matthews* (2020) 47 Cal.App.5th 857, 868, for its statement that "the purposes of Senate Bill 136 []would be frustrated if the trial court were allowed to unilaterally alter agreed-upon terms of a plea agreement after striking enhancement sentences as required by Senate Bill 136." That decision was issued before *Stamps* and examines the slightly different question of whether, after striking enhancements under Senate Bill 136, a trial court can reconsider a defendant's sentence entirely in order to impose a newly constituted term as close to the original as possible. Because *Matthews* does not consider whether the People have a right to withdraw from the plea agreement, which is the People's argument here, we do not rely on it.

trial courts discretion over whether to strike an enhancement. (*Stamps*, *supra*, 9 Cal.5th at p. 701.)

Unlike *Hernandez*, we view this difference as significant. (*Hernandez*, *supra*, 55 Cal.App.5th at p. 957.) Under Senate Bill 1393, it is ultimately a trial court that chooses whether an enhancement is eliminated—meaning that Senate Bill 1393 directly implicates the prohibition on a trial court's ability to unilaterally modify an agreed-upon sentence. But under Senate Bill 136, the Legislature itself has mandated the striking of affected prison priors by making the enhancement portion of France's sentence illegal. (Cf. *Collins*, *supra*, 21 Cal.3d at p. 214 [when conviction rests on conduct that is no longer sanctioned, the proper remedy is to reverse the conviction].) Thus, Senate Bill 136 does not involve *Stamps'* repeated and carefully phrased concern with the "long-standing law that a *court* cannot *unilaterally* modify an agreed-upon term by striking portions of it under section 1385." (*Stamps*, *supra*, 9 Cal.5th at p. 701, italics added; see also *id.* at pp. 701–702, 707 [repeatedly describing the issue as concerning trial courts' unilateral authority to affect sentences].) Because Senate Bill 136 has a direct and conclusive effect on the legality of existing sentences pursuant to *Estrada*, rather than merely giving trial courts discretion to modify sentences under

section 1385, it stands closer to Proposition 47 and *Harris*, despite the absence of an express resentencing provision.[6]

Moreover, *Stamps* emphasized that the defendant's position—that he was entitled to have his prior serious felony enhancement stricken but otherwise keep the rest of his plea agreement intact—ran counter to Senate Bill 1393's goal of achieving uniformity in trial courts' sentencing discretion. (*Stamps, supra*, 9 Cal.5th at pp. 702, 704.) As the court observed, giving trial courts discretion to unilaterally modify pleas that involved serious felony enhancements would have elevated trial courts' authority over such enhancements above their discretion to strike other types of enhancements. (*Id.* at p. 704.) Senate Bill 136, by contrast, raises no such concerns. Senate Bill 136 eliminated an enhancement for defendants who served prior prison terms for non-sexually violent offenses, without any reference to creating uniformity with other types of enhancements. (See *People v. Jennings, supra*, 42 Cal.App.5th at p. 681; *Hernandez, supra*, 55 Cal.App.5th at p. 957–958 [describing Senate Bill 136's purpose].) Thus, reading Senate Bill 136 to obligate a trial court simply to strike now-unauthorized enhancements from plea-bargained sentences would not create any disturbances or inconsistencies in the law applicable to other enhancements. As a result, unlike Senate Bill 1393, there is nothing in Senate Bill 136's text or

---

[6] The dissent contends the operative question is not one of discretion, but merely whether a legislative change gives a court "authority to modify the plea agreement by leaving the remnants of the agreed-upon sentence intact without securing the parties' assent to the modification." (Dissent, at p. 6.) But this contention overlooks *Doe*, which established that plea agreements generally incorporate the Legislature's reserve power to change the law. (*Doe, supra,* 57 Cal.4th at pp. 66, 73.) Under *Doe*, it matters very much whether a court makes a discretionary change to a plea bargain (as in *Stamps*) or the Legislature makes a change in the law that necessarily affects the bargain (as here).

legislative history that runs contrary to the view that Senate Bill 136 requires a court to strike the one-year enhancements while leaving the remainder of the plea bargain intact. (See *Stamps*, *supra*, 9 Cal.5th at p. 702.) And as we noted above, construing Senate Bill 136 to allow the People to withdraw from plea deals containing the affected enhancements could prevent the Legislature from fully realizing its goals of departing from mass incarceration, saving money on prison costs, and keeping families together. (See *Hernandez*, *supra*, 55 Cal.App.5th at pp. 957–958 [describing Senate Bill 136's purpose].)

We also find the People's and *Hernandez*'s broad reading of *Stamps* to be untenable for a different reason. Their focus on *Stamps*' remarks regarding the absence of an express reference to plea bargaining in a statute's text or legislative history would mean that any retroactive ameliorative change in a criminal law that does not contain such an express reference would entitle the prosecution to re-open the plea bargain to add back previously-dismissed charges or allegations. But as discussed above, the *Estrada* presumption of retroactivity arises only when an ameliorative amendment lacks an express retroactivity provision. (*Estrada*, *supra*, 63 Cal.2d at pp. 744–745.) In essence, then, the People and *Hernandez* would create a rule that defendants who plead guilty may benefit from the retroactive operation of any law whose retroactivity depends on the *Estrada* presumption only if the prosecution assents. Such an approach would drastically undermine the *Estrada* principle that the Legislature intends a lighter penalty to apply "to every case to which it constitutionally could apply" (*Estrada*, at p. 745), particularly as defendants who plead guilty represent the vast majority of convictions (*In re Chavez*, *supra*, 30 Cal.4th at

21

p. 654, fn. 5).  We see no indication in *Stamps* that the Supreme Court intended such a result.[7]

### III.  DISPOSITION

The judgment is modified by striking the one-year enhancement pursuant to Senate Bill 136 and section 667.5, subdivision (b), as amended. The trial court is ordered to amend the abstract of judgment in accordance with this opinion, and to forward a certified copy of the amended judgment to the Department of Corrections and Rehabilitation.  As modified, the judgment is affirmed.


BROWN, J.


I CONCUR:

TUCHER, J.

---

[7] *Hernandez* views *Stamps* as allowing the prosecution on a remand to seek to impose a lengthier sentence than was originally set in the plea, despite *Collins'* concern with penalizing a defendant for claiming the benefit of an ameliorative change in the law.  (*Hernandez, supra,* 55 Cal.App.5th at p. 958; *Collins, supra,* 21 Cal.3d at pp. 216–217.)  *Stamps* did not overrule *Collins*, but instead merely limited its application to situations where a trial court receives retroactive discretion to strike enhancements, so we disagree with *Hernandez* on this point as well.  (See *People v. Griffin, supra,* ___ Cal.App.5th ___ [2020 Cal. App. Lexis 1138] [concluding *Collins* remains good law].)  In any event, we find it inappropriate to incorporate *Collins'* approach to the appropriate remedy here because Senate Bill 136 does not "eviscerate[] the judgment and plea the underlying bargain entirely," as did the decriminalization of the defendant's conduct in *Collins*.  (*Harris, supra,* 1 Cal.5th at p. 993 [distinguishing *Collins* on this basis].)

22

POLLAK, P.J., Concurring and Dissenting.

I agree with my colleagues that Senate Bill No. 136 (2019–2020 Reg. Sess.) (Senate Bill No. 136) applies retroactively to judgments not yet final, that defendant's judgment is not yet final for this purpose, and therefore that the one-year enhancement under amended Penal Code[8] section 667.5, subdivision (b) may not be applied to defendant's sentence. (Stats. 2019, ch. 590, § 1, eff. Jan. 1, 2020.) However, in determining the remedy for the imposition of the enhancement prior to the effective date of the ameliorative legislation, I believe the majority misapplies the Supreme Court's recent decision in *People v. Stamps* (2020) 9 Cal.5th 685 (*Stamps*). Like the Fifth District Court of Appeal in *People v. Hernandez* (2020) 55 Cal.App.5th 942 (*Hernandez*), and our colleagues in Division Five in *People v. Griffin* (Nov. 30, 2020, A159104) ___ Cal.App.5th ___ [2020 Cal.App. Lexis 1138] and *People v. Joaquin* (Dec. 4, 2020, A152786) ___ Cal.App.5th ___ [2020 Cal.App. Lexis 1151]. I conclude that Senate Bill 136 does not empower a court to unilaterally alter the plea bargain struck between the prosecution and the defendant for imposition of a four-year sentence by reducing the sentence to three years without the People's consent. Upon defendant's application to strike the one-year enhancement, I believe the prosecution must be given the option of agreeing to a three-year term or withdrawing from the plea agreement.[9]

---

[8] All statutory references are to the Penal Code unless otherwise noted.

[9] The decision by Division Two of this court in *People v. Matthews* (2020) 47 Cal.App.5th 857, 866, which held that because a plea agreement "specifie[d] the precise sentences to be imposed for each charge and enhancement," the trial court "lack[ed] the power to alter those sentences except to eliminate enhancements affected by Senate Bill No. 136," was rendered prior to the decision in *Stamps*. Its correctness turns on the proper understanding of the Supreme Court's subsequent holding in *Stamps*.

*Stamps* addressed another recent ameliorative statute, Senate Bill No. 1393 (2017–2018 Reg. Sess.) (Senate Bill 1393), which amended subdivision (a) of section 667. (Stats. 2018, ch. 1013, §§ 1, 2.) That provision formerly mandated a five-year sentence enhancement for a defendant previously convicted of a serious felony and then convicted of a new serious felony. (See *Stamps, supra*, 9 Cal.5th at pp. 693–694.) Senate Bill 1393 gave courts the discretion to strike such an enhancement in the interest of justice pursuant to section 1385. (*Id.* at pp. 693, 700.) *Stamps* held that Senate Bill 1393 applied retroactively to an enhancement that was part of a sentence imposed pursuant to a plea bargain dictating a specific prison term, necessitating a remand for the trial court to exercise its newly conferred discretion to determine whether to strike the enhancement. (*Id.* at pp. 698–700.) However, the *Stamps* court explained that section 1385 "ordinarily does not authorize a trial court to exercise its discretion to strike [an enhancement] in contravention of a plea bargain for a specified term." (*Ibid.*) Once a court approves a plea bargain, "long-standing law limits [its] unilateral authority to strike an enhancement yet maintain other provisions of the plea bargain" without affording " 'an opportunity to the aggrieved party to rescind the plea agreement and resume proceedings where they left off.' " (*Id.* at p. 701.) While the legislative history of Senate Bill 1393 shows that it was intended to reduce prison costs and ameliorate a " 'rigid and arbitrary system' " that meted out disproportionate punishments, that history "does not demonstrate any intent to overturn existing law regarding a court's lack of authority to unilaterally modify a plea agreement. Indeed, none of the legislative history materials mention plea agreements at all." (*Id.* at p. 702.) As a result, the enactment of Senate Bill 1393 "gave a court the same discretion to strike a serious felony enhancement that it retains to strike any

other [enhancement]" but did not "operate to change well-settled law that a court lacks discretion to modify a plea agreement unless the parties agree to the modification." (*Ibid.*)

*Stamps* distinguished *Harris v. Superior Court* (2016) 1 Cal.5th 984 (*Harris*), which addressed the retroactive application of Proposition 47. That initiative measure reclassified certain theft offenses from felonies to misdemeanors, and *Harris* held that its retroactive application to a sentence entered pursuant to a plea bargain did not entitle the prosecution to withdraw from the plea agreement and reinstate the original charges. The *Stamps* Court distinguished the two cases on the ground that, unlike Senate Bill 1393, Proposition 47 "specifically applied to a person ' "serving a sentence for a conviction, whether by trial or plea." ' " (*Stamps, supra*, 9 Cal.5th at p. 703.) By " 'expressly mentioning convictions by plea, Proposition 47 contemplated relief to all eligible defendants.' " (*Ibid.*, quoting *Harris, supra*, 1 Cal.5th at p. 991.) "[T]o allow the prosecution, in response to a successful resentencing petition, to withdraw from a plea agreement and reinstate dismissed charges would frustrate electoral intent to treat these offenses uniformly as misdemeanors, essentially denying meaningful relief to those convicted through plea bargains." (*Stamps*, at p. 704, citing *Harris*, at p. 992.)

However, *Stamps* held, "[s]imilar considerations do not apply" to Senate Bill 1393 because "[n]othing in the language and legislative history of Senate Bill 1393 suggests an intent to modify section 1192.5's mandate that 'the court may not proceed as to the plea other than as specified in the plea' without the consent of the parties." (*Stamps, supra*, 9 Cal.5th at p. 704.) The fact that Senate Bill 1393 "is silent regarding pleas and provides no express mechanism for relief undercuts any suggestion that the Legislature intended to create special rules for plea cases involving serious felony enhancements"

3

by allowing a trial court "to strike the serious felony enhancement but otherwise retain the plea bargain." (*Ibid*.)

As a result, the defendant could not " ' "whittle down the sentence 'but otherwise leave the plea bargain intact.' " ' " (*Stamps, supra*, 9 Cal.5th at p. 706.) Instead, the case had to be remanded to give the defendant the option of asking the trial court to exercise its discretion to strike the enhancement. (*Id*. at p. 707.) If the defendant chose to make that request and the court granted it, the prosecutor could either assent to the modified sentence or withdraw from the plea agreement—and the trial court itself could withdraw its approval of the plea agreement, once shorn of the enhancement. (*Ibid*.)

The Fifth Appellate District reviewed *Stamps* and *Harris* at length in *Hernandez, supra,* 55 Cal.App.5th 942, a case that raised the same issue we confront here. It was undisputed in *Hernandez* that the trial court was required to remand the case with instructions to strike prior-prison-term enhancements imposed pursuant to a pre-Senate Bill 136 plea bargain. When the Court of Appeal turned to the question of "[t]he scope of the trial court's authority on remand," it concluded that under *Stamps*, the answer "depends on whether the Legislature intended for Senate Bill 136 to allow the trial court to unilaterally modify the plea agreement once the prior prison term enhancements are stricken." (*Hernandez*, at p. 957.) Reviewing the bill's history, the *Hernandez* court found "no evidence the Legislature intended Senate Bill 136 . . . to allow the trial court to unilaterally modify a plea agreement once the prior prison term enhancements are stricken." (*Ibid*.) It thus concluded that Senate Bill 136 is analogous to Senate Bill 1393, the statute at issue in *Stamps*. Senate Bill 136 "is silent regarding pleas and provides no express mechanism for relief, and thus refutes any suggestion the Legislature intended to create special rules for the court to unilaterally

4

modify the plea agreement once the enhancements are stricken." (*Id.* at p. 958.) After a court dismisses pre-Senate Bill 136 enhancements that were part of an agreed sentence, "it cannot unilaterally modify the plea agreement by keeping the remainder of the bargain intact"; instead, "the People may withdraw from the plea agreement." (*Id.* at p. 959.)

I agree with the Fifth Appellate District and with our colleagues in Division Five who have reached the same conclusion. (*People v. Griffin*, *supra*, ___ Cal.App.5th ___ [2020 Cal.App. Lexis 1138 at *1–*2].) Unlike the provision in Proposition 47 interpreted in *Harris*, there is no indication in Senate Bill 136 that the Legislature intended "to change well-settled law that a court lacks discretion to modify a plea agreement unless the parties agree to the modification." (*Stamps, supra*, 9 Cal.5th at p. 702.) Thus, as in *Stamps*, on remand the district attorney must be given the option of accepting the reduction of the agreed-upon total sentence by one year or withdrawing from the prior plea agreement.

The *Hernandez* court also rejected the basis on which the majority here distinguishes *Stamps*—that "*Stamps* is inapplicable to this case because Senate Bill 136 now mandates the dismissal of the prior prison term enhancements, while the amendment in *Stamps* only allowed the trial court to decide whether to exercise its discretion to dismiss the prior serious felony enhancement." (*Hernandez, supra*, 55 Cal.App.5th at p. 957.) I agree with *Hernandez* that "both *Stamps* and *Harris* focused on the history of the amendments [at issue] to determine whether there was any intent . . . 'to change well-settled law that a court lacks discretion to modify a plea agreement unless the parties agree to the modification.' " (*Ibid.*, quoting *Stamps, supra*, 9 Cal.5th at p. 702.) The question is not whether striking an enhancement is discretionary or mandatory but whether, after a court does

5

strike the enhancement, it has the authority to modify the plea agreement by leaving the remnants of the agreed-upon sentence intact without securing the parties' assent to the modification. As in *Hernandez*, neither defendant nor the majority has identified any evidence that the Legislature intended Senate Bill 136 to confer such authority.

While it is true, as the majority states, that it is the Legislature that "has mandated the striking of affected prison priors by making the enhancement portion of France's sentence illegal" (maj. opn., *ante*, at p. 19), the reduction of the agreed four-year term to three years without the prosecutor's consent would be no less unilateral than if striking the enhancement had been within the court's discretion. It was not the fact that striking the enhancement in *Stamps* was discretionary that would have rendered automatic reduction of the sentence unilateral and impermissible; that outcome was precluded because the prosecution, which had agreed to a nine-year sentence, had not agreed to any lesser sentence.

Whether or not a sentence of four years could have been derived in this case by an alternative calculation that did not include the section 667.5, subdivision (b) enhancement, in many cases the same number of years can be derived in numerous ways—for example, by relying on a different choice of the triad term, retaining or dismissing different counts, applying different enhancements, or waiving custody credits as occurred here. To simply strike the enhancement while leaving the balance of the term in place would result in an "agreed" term to which the prosecution did not in fact agree. This result, in my view, contravenes section 1192.5 ("Where the plea is accepted by the prosecuting attorney in open court and is approved by the court, . . . the court may not proceed as to the plea other than as specified in the plea"), and the Supreme Court's recent reaffirmation of "well-settled law that a court

6

lacks discretion to modify a plea agreement unless the parties agree to the modification." (*Stamps, supra*, 9 Cal.5th at p. 702.). Such a unilateral modification may be authorized where an ameliorative enactment explicitly applies to a sentence imposed pursuant to a plea bargain, as under Proposition 47 and section 1170.91, but *Stamps* makes clear that it is not otherwise authorized.

I would remand this case to the superior court with directions to strike from defendant's sentence the one-year enhancement imposed pursuant to section 667.5, subdivision (b); to permit the district attorney to elect whether to accept the reduced sentence or to withdraw from the plea agreement; to consider whether to approve the agreement if the prosecutor agrees to its modification; and otherwise to proceed in conformity with *People v. Stamps, supra,* 9 Cal.5th 685.

POLLAK, P. J.

7

Trial Court:        Mendocino County Superior Court

Trial Judge:        Hon. Keith Faulder

Counsel:

Michah Revner, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance Winters, Chief Assistant Attorney General, Jeffrey M. Laurence, Assistant Attorney General, Donna M. Provenzano, Jalem Z. Peguero, Deputy Attorneys General for Plaintiff and Respondent